Section VI: General Administration

Policy Number: VI-1.60(A)

UNIVERSITY OF MARYLAND POLICY AND PROCEDURES ON SEXUAL HARASSMENT AND OTHER SEXUAL MISCONDUCT

(Approved on an interim basis October 13, 2014; Amended May 4, 2015; Amended October 1, 2015; Amended March 21, 2016; Amended May 13, 2016; Amended and approved on an interim basis June 24, 2019; Amended and approved by the President on December 12, 2019; Amended and approved on an interim basis effective August 14, 2020; Amended May 10, 2021; Amended and approved on an interim basis by the President August 23, 2021)

**Policy Index**

I. Introduction

II. Purpose

III. Scope and Applicability

IV. Jurisdiction

V. Reporting

VI. Amnesty for Students Who Report Prohibited Conduct

VII. Definitions

VIII. Prohibited Conduct

IX. Sanctions

X. Confidential Resources

XI. Co-Occurring Criminal Action

XII. Rights of Parties

XIII. False Statements

XIV. Legal Representation Fund for Title IX Proceedings (Students Only)

XV. Emergency Removals and Other Interim Measures

XVI. Consensual Relationships and Professional Conduct

XVII. Training

XVIII. Records Retention

XIX. External Government Agencies

Exhibit D, 1 of 38

5/11/23, 6:23 PM    University Policies | UMD | University of Maryland Policy and...

Case 1:23-cv-03507-RDB   Document 2-6   Filed 12/27/23   Page 2 of 38

**Procedures Index**

I. Applicability

II. Anticipated Timelines

III. Right to Support Person and Advisor

IV. Notification of Meetings, Interviews, and Hearing

V. Report Intake and Formal Complaint

VI. Resolution Processes

## I. Introduction

The mission of the University of Maryland ("the University") is to cultivate a transformative educational, scholarly, and professional experience for all members of its campus community while safeguarding their personal health and well-being. The University is committed to creating a collaborative environment open to the free exchange of ideas, where scholarship, creativity, innovation, and entrepreneurship can flourish and where individuals can achieve their full potential. The University affirms that commitment by striving to maintain an academic and work environment that empowers all to work, study, innovate, and perform without fear of sexual misconduct, sexual violence, and power-based violence. Such misconduct and violence diminish individual dignity, are contrary to the values of the University, and are a barrier to the fulfillment of the University's mission. It is incumbent upon every member of the University community to foster an environment free from sexual misconduct by upholding the University's core mission and values, and by working together to avoid harmful situations through a shared understanding of how to prevent sexual misconduct and how to address it if it occurs.

## II. Purpose

Prohibited Conduct undermines the character and purpose of the University and the University will take appropriate prompt and effective action to eliminate Prohibited Conduct, prevent its recurrence, and remedy its effects. The purpose of this Policy and Procedures is to describe the Prohibited Conduct; describe how to report or file a complaint; provide resources for counseling, safety, emotional support, and advocacy; articulate the procedures for investigating and resolving complaints; and articulate awareness and educational training objectives.

The University acknowledges its commitment to a working and learning environment free from sexual misconduct through training, education, prevention programs, and policies and procedures that promote prompt reporting and response, provide support to persons alleged to be victimized, prohibit retaliation, and implement timely, fair, and impartial investigations and resolutions that ensure due process and remedy Policy violations. Sexual Harassment, Other Sexual Misconduct, and Retaliation are Prohibited Conduct and will not be tolerated in any form. This Prohibited Conduct corrupts the integrity of the educational process and work environment and violates the core mission and values of the University, and the University will address such conduct in accordance with this Policy.

Nothing in this Policy and Procedures should be interpreted to abridge academic freedom or principles of free speech. The University will not condone behavior that violates the freedom of speech, choice, assembly, or movement of other individuals or organizations. In short, responsible dissent carries with it sensitivity for the civil rights of others.

## III. Scope and Applicability

This Policy prohibits Sexual Harassment, Other Sexual Misconduct, and Retaliation. This Prohibited Conduct may be a form of sex discrimination prohibited by federal and Maryland State discrimination laws, including Title IX of the Education Amendments of 1972 (Title IX) and Title VII of the Civil Rights Act of 1964 (Title VII). This Policy also is in compliance with the University's obligations under Maryland law and University System of Maryland Policy VI-1.60.

This Policy addresses the University's obligations under Title IX. Title IX provides, "No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal

Exhibit D, 2 of 38

financial assistance." The University, under this Policy, goes beyond Title IX to include in its Prohibited Conduct other forms of sexual misconduct that are antithetical to the University's core mission and values. This Policy also addresses allegations of Other Sexual Misconduct, which includes Sexual Harassment that occurred against a person outside of the United States or not within an Education Program or Activity; Sexual Coercion; Sexual Exploitation; Sexual Intimidation; Attempted Sexual Assault; and Other Sex-Based Offenses. Retaliation is also addressed.

Federal regulations implementing Title IX require that the University follow certain procedures when the University obtains Actual Knowledge of Sexual Harassment in its Education Program or Activity against a person in the United States. The University of Maryland fulfills those requirements through these Procedures. This Policy and Procedures govern all forms of Prohibited Conduct that is alleged to be in violation of Title IX and this Policy.

This Policy applies to all members of the University community, including students, faculty, and staff. It also applies to contractors and other third parties who are engaged in any University Education Program or Activity, or who are otherwise interacting with the University, including, but not limited to volunteers, vendors, guests, and visitors. All University members are prohibited from engaging in, or assisting or abetting another's engagement in Sexual Harassment, Other Sexual Misconduct, or Retaliation.

This Policy applies to all reports of Prohibited Conduct occurring on or after the effective date of this Policy. Where the date of the alleged Prohibited Conduct precedes the effective date of this Policy, the definitions of misconduct in existence at the time of the alleged incident(s) will be used. The Procedures under this Policy, however, will be used to investigate and resolve all reports made on or after the effective date of this Policy, regardless of when the alleged incident(s) occurred.

To the extent any provision of this Policy conflicts with any other University policy, this Policy controls. Prohibited Conduct under this Policy may also be sex discrimination in violation of *VI-1.00(B) University of Maryland Non-Discrimination Policy and Procedures*. However, this Policy and Procedures supersedes *VI-1.00(B) University of Maryland Non-Discrimination Policy and Procedures* with respect to allegations of Prohibited Conduct addressed by this Policy. The University will respond to reports and complaints of Prohibited Conduct in accordance with this Policy and Procedures.

## IV. Jurisdiction

   A. This Policy applies to reported acts of Prohibited Conduct committed by or against students, faculty, staff, and third parties when:

   1. Conduct occurs on University premises, in any University facility, or on property owned or controlled by the University;

   2. Conduct occurs in the context of a University Education Program or Activity, including, but not limited to, University-sponsored academic, athletic, extracurricular, study abroad, research, online or internship programs or activities;

   3. Conduct occurs outside the context of a University Education Program or Activity, but has continuing adverse effects on or creates a hostile environment for students, employees or third parties while on University premises or other property owned or controlled by the University or in any University Education Program or Activity; or

   4. Conduct otherwise threatens the health and/or safety of University members.

   B. The University does not have jurisdiction to investigate reported incidents involving members of the University community that occurred prior to the individual being enrolled at or employed by the University when the incident did not occur on campus or otherwise in connection with a University Education Program or Activity.

## V. Reporting

   A. **General**

      All persons are encouraged to report Prohibited Conduct promptly, in order to ensure that all Parties affected by the alleged Prohibited Conduct are provided with support and connected with available resources. Prompt reporting is also critical for the preservation of physical and other evidence, which may be important in the University's administrative process and/or to prove criminal conduct or to obtain a civil or criminal

Exhibit D, 3 of 38

5/11/23, 6:23 PM                    University Policies | UMD | University of Maryland Policy and...

Case 1:23-cv-03507-RDB   Document 2-6   Filed 12/27/23   Page 4 of 38

order of protection. In addition to reporting Prohibited Conduct, individuals may also speak with a confidential resource at any time, as detailed in Section X of this Policy.

B. **Reporting to the Office of Civil Rights & Sexual Misconduct**

Any person may report Prohibited Conduct at any time by contacting the Title IX Coordinator/Officer (Title IX Officer) or to the Office of Civil Rights & Sexual Misconduct (OCRSM), listed below, regardless of whether the reporting person is the Complainant.

**Grace C. Karmiol, Esq., OCRSM Director and Title IX Coordinator/Officer**
University of Maryland
Office of Civil Rights & Sexual Misconduct (OCRSM)
3101 Susquehanna Hall
4200 Lehigh Road
College Park, MD 20742-5025
E-mail: **gkarmiol@umd.edu** | **titleixcoordinator@umd.edu**
Telephone: 301-405-1142
Website: **http://www.ocrsm.umd.edu/**

An online reporting form is accessible on the OCRSM website 24 hours/7 days a week unless there is scheduled maintenance.

Prompt reporting to OCRSM maximizes the University's ability to obtain evidence, identify potential witnesses, and conduct a thorough, prompt, and impartial investigation. While there are no time limits to reporting Prohibited Conduct, if too much time has passed since the incident occurred, the delay may result in loss of relevant evidence and witness testimony, impairing the University's ability to respond and take appropriate action.

The Title IX Officer is responsible for coordinating the University's efforts to comply with Title IX and this Policy. The Title IX Officer leads, coordinates, and oversees OCRSM, including OCRSM's efforts regarding compliance training, prevention programming, and educational programs. The Title IX Officer is available to meet with any student, employee, or third party to answer any questions about this Policy.

C. **Reporting to a Responsible University Employee**

Any person may also report Prohibited Conduct to a Responsible University Employee (RUE) including but not limited to the University of Maryland Police Department (UMPD). A Responsible University Employee, as defined in Section VII, must promptly notify the Title IX Officer of any report of Prohibited Conduct brought to their attention[1]. The Title IX Officer works collaboratively with the reporting party or entity, making every effort to operate with discretion and maintain the privacy of the individuals involved. No employee (other than UMPD) is authorized to investigate or resolve reports of Prohibited Conduct without the involvement of the Title IX Officer.

D. **Reporting to the Police**

Prohibited Conduct, particularly Sexual Assault, may be a crime. The University will assist Complainants who wish to report Prohibited Conduct to law enforcement authorities, including UMPD 24 hours a day/7 days a week. Representatives of the OCRSM, the Office of Student Conduct (OSC), the Department of Resident Life's Office of Rights and Responsibilities (R&R), and Campus Advocates Respond and Educate (CARE) to Stop Violence Office in the University Health Center are available to assist students with reporting to UMPD.

UMPD are Responsible University Employees under this Policy and are required to notify the Title IX Officer of any report of Prohibited Conduct. UMPD will also assist Complainants in notifying other law enforcement authorities in other jurisdictions, as appropriate. To report to UMPD, please call 301-405-3333 or 911. Callers may also dial 301-405-3555 or via mobile phone #3333. Regardless of where the incident occurred **Call 911** in an emergency.

Because the standards for a violation of criminal law are different from the standards for a violation of this Policy, criminal investigations and proceedings are not determinative of whether a violation of this Policy has occurred. In other words, conduct may violate this Policy even if law

5/11/23, 6:23 PM　　　University Policies | UMD | University of Maryland Policy and...

Case 1:23-cv-03507-RDB　Document 2-6　Filed 12/27/23　Page 5 of 38

enforcement agencies or local prosecutors decline to prosecute. Complaints of Sexual Harassment and Other Sexual Misconduct and related internal University processes may occur prior to, concurrent with, or following criminal proceedings off campus.

E. **Clery Act Timely Warnings**

If a report of Prohibited Conduct discloses a serious and ongoing threat to the University community, UMPD may issue a timely warning of the conduct in compliance with the Clery Act in the interest of the health and safety of the University community. This notice will not contain any personally identifying information related to the victim.

## VI. Amnesty for Students Who Report Prohibited Conduct

A. The University recognizes that a student who is under the influence of alcohol and/or drugs when an incident of Prohibited Conduct occurs may be reluctant to report the Prohibited Conduct out of concern that the student may face disciplinary actions for engaging in prohibited alcohol or drug use. As such, a student who reports Prohibited Conduct to the University or law enforcement, or who participates in an investigation either as a Complainant or witness, will not face disciplinary action for violating University drug and alcohol policies.

B. This Amnesty provision applies only when the University determines that:

1. The drug/alcohol violation occurred during or near the time of the reported Prohibited Conduct;

2. The student acted in good faith in reporting or participating as a witness; and

3. The violation was not likely to place the health or safety of another individual at risk.

## VII. Definitions

For purposes of this Policy and Procedures, the following definitions apply:

A. **"Actual Knowledge"** means notice of Sexual Harassment or allegations of Sexual Harassment to the Title IX Officer or any University official who has authority to institute corrective measures on behalf of the University.

B. **"Advisor"** means a person chosen by a Party to provide advice and consultation to that Party, in accordance with this Policy and Procedures. An Advisor may be an attorney or another individual. A Party's Advisor also conducts cross-examination on behalf of that Party at a Hearing, if applicable, in accordance with this Policy and Procedures. An Advisor shall not be an active participant or speak on behalf of a Party except for the purpose of providing cross-examination at a Hearing. If a Party does not have an Advisor, the University will provide without fee or charge to that Party, an Advisor of the University's choice, to conduct cross-examination on behalf of that Party; an Advisor appointed by the University acts in a confidential capacity on behalf of the Party and is not otherwise involved in the proceedings.

C. **"Appellate Hearing Officer"** means an individual designated to review decisions concerning responsibility and sanctions, based on the Respondent's status as a student, staff member, faculty member, or third party. Appellate Hearing Officers shall have had no previous involvement with the substance of the Formal Complaint.

D. **"Complainant"** means the individual who is alleged to be the victim of conduct that could constitute a violation of this Policy.

E. **"Consent"** means a knowing, voluntary, and affirmatively communicated willingness to participate in a particular sexual activity or behavior. Only a person who has the ability and capacity to exercise free will and make a rational, reasonable judgment can give Consent. Consent may be expressed either by words and/or actions, as long as those words and/or actions create a mutually understandable agreement to engage in specific sexual activity. It is the responsibility of the person who wants to engage in sexual activity to ensure that the person has Consent from the other party, and that the other party is capable of providing Consent.

1. Lack of protest or resistance is not Consent. Nor may silence, in and of itself, be interpreted as Consent.

**Exhibit D, 5 of 38**

2. Previous relationships, including past sexual relationships, do not imply Consent to future sexual acts.

3. Consent to one form of sexual activity cannot automatically imply Consent to other forms of sexual activity.

4. Consent must be present throughout sexual activity and may be withdrawn at any time. If there is confusion as to whether there is Consent or whether prior Consent has been withdrawn, it is essential that the participants stop the activity until the confusion is resolved.

5. Consent cannot be obtained by use of physical force or Sexual Coercion.

6. An individual who is Incapacitated is unable to give Consent.

F. **"Day"** means a business weekday when the University is not closed.

G. **"Education Program or Activity"** means all of the University's operations (including but not limited to employment); locations, events, or circumstances over which the University exercises substantial control over both the Respondent and the context in which the Prohibited Conduct occurs; and also includes any building owned or controlled by a student organization that is officially recognized by the University.

H. **"Formal Complaint"** means a Document filed by a Complainant or signed by the Title IX Officer alleging Prohibited Conduct against a Respondent and requesting that the University proceed with the resolution process. A Formal Complaint may be filed with the Title IX Officer in person, by mail, by e-mail, or any additional method designated by the University in accordance with these Procedures.

1. **"Document filed by a Complainant"** means a document or electronic submission that contains the Complainant's physical or digital signature, or otherwise indicates that the Complainant is the person filing the Formal Complaint. Where the Title IX Officer signs a Formal Complaint, the Title IX Officer is not a Complainant or otherwise a Party.

I. **"Hearing"** means a live, formal proceeding attended by the Parties in person or by video conference in which evidence is presented, witnesses are heard, and crossexamination occurs, prior to the Hearing Officer's decision concerning responsibility and Sanctions, if applicable.

J. **"Hearing Officer"** means an individual designated to preside over the Hearing and has decision-making and sanctioning authority within the adjudication process.

K. **"Incapacitated"** means an individual's decision-making ability is impaired such that the individual lacks the capacity to understand the "who, what, where, why, or how" of their sexual interaction. Incapacitation may result from sleep, unconsciousness, intermittent consciousness, physical restraint, or any other state where the individual is unaware that sexual contact is occurring. Incapacitation may also exist because of a temporary or permanent mental or developmental disability that impairs the ability to Consent to sexual contact. Alcohol or drug use is one of the primary causes of Incapacitation. Where alcohol or drug use is involved, Incapacitation is a state beyond intoxication, impairment in judgment, or drunkenness. Because the impact of alcohol or other drugs varies from person to person, evaluating whether an individual is Incapacitated, and therefore unable to give Consent, requires an assessment of whether the consumption of alcohol or other drugs has rendered the individual physically helpless or substantially incapable of:

1. Making decisions about the potential consequences of sexual contact;

2. Appraising the nature of one's own conduct;

3. Communicating Consent to sexual contact; or

4. Communicating unwillingness to engage in sexual contact.

L. **"Informal Resolution"** means a broad range of conflict resolution strategies, including, but not limited to, mediation, Respondent acknowledgement of responsibility, and/or negotiated interventions and remedies.

M. "**Investigator**" means a professionally trained University staff member or third-party contractor designated to conduct an impartial, fair, and unbiased investigation into an alleged violation of this Policy.

**Exhibit D, 6 of 38**

Case 1:23-cv-03507-RDB   Document 2-6   Filed 12/27/23   Page 7 of 38

N. **"No Contact Order"** means an official directive that serves as notice to an individual that the individual must not have verbal, electronic, written, or third-party communications with another individual.

O. **"Party"** means the Complainant or the Respondent (collectively, the "Parties").

P. **"Preponderance of the Evidence"** means that it is more likely than not that a Policy violation has occurred.

Q. **"Remedies"** means actions designed to restore or preserve the Complainant's equal access to the University's Education Program or Activity. Remedies are similar to Supportive Measures but may be punitive and burden the Respondent.

R. **"Respondent"** means the individual alleged to have engaged in Prohibited Conduct under this Policy.

S. **"Responsible University Employee"** means all University administrators, supervisors, faculty members, graduate assistants, UMPD, athletic coaches, athletic trainers, resident assistants, and first responders, who are not confidential resources. Responsible University Employee is a term of art for purposes of this Policy only and for no other purposes.

T. **"Sanctions"** means disciplinary and other consequences imposed on a Respondent who is found to have violated this Policy.

U. **"Support Person"** means a person chosen by the Complainant or Respondent to provide emotional, logistical, or other kinds of assistance. The Support Person is a non-participant who is present to assist a Complainant or Respondent by taking notes, providing emotional support and reassurance, organizing documentation, or consulting directly with the Party in a way that does not disrupt or cause any delay. A Support Person shall not be an active participant or a witness, and the Parties must speak for themselves.

V. **"Supportive Measures"** mean non-disciplinary, non-punitive individualized services offered as appropriate, as reasonably available, and without fee or charge to the Complainant or the Respondent to restore or preserve equal access to Education Programs or Activities without unreasonably burdening the other party, including measures designed to protect the safety of all parties or the University's educational environment, or to deter Prohibited Conduct under this Policy.

VIII. Prohibited Conduct

This Policy prohibits Sexual Harassment, Other Sexual Misconduct, and Retaliation as set forth below. Prohibited Conduct can occur between strangers or acquaintances, including people involved in an intimate or sexual relationship. Prohibited Conduct can be committed by any person, regardless of gender identity, and can occur between people of the same or different sex, sexual orientation, or gender expression.

A. **Sexual Harassment**[2] means conduct on the basis of sex that satisfies one or more of the following:

1. **Quid Pro Quo:** An employee of the University conditioning the provision of an aid, benefit, or service of the University on an individual's participation in unwelcome sexual conduct.

2. **Hostile Environment:** Unwelcome conduct determined by a reasonable person to be so severe, pervasive, and objectively offensive that it effectively denies a person equal access to the University's Education Program or Activity.

3. **Sexual Assault:** An offense classified as a sex offense under the uniform crime reporting system of the Federal Bureau of Investigation. Sex offenses are any sexual acts directed against another person, without the Consent of the victim, including instances where the victim is incapable of giving Consent (NonConsensual Sexual Penetration or Fondling); also, unlawful sexual intercourse (Incest or Statutory Rape).

   a. **Non-Consensual Sexual Penetration:** Penetration, no matter how slight, of the genital or anal opening of the body of another person with any body part or object, or oral penetration by a sex organ of another person, without the Consent of the victim, including instances where the victim is incapable of giving Consent because of their age or because of their temporary or permanent mental or physical incapacity.[3]

**Exhibit D, 7 of 38**

b. **Fondling:** The touching of the private body parts of another person for the purpose of sexual gratification without the Consent of the victim, including instances where the victim is incapable of giving Consent because of their age or because of their temporary or permanent mental or physical incapacity.

c. **Incest:** Nonforcible sexual intercourse between persons who are related to each other within the degrees wherein marriage is prohibited by law.

d. **Statutory Rape:** Nonforcible sexual intercourse with a person who is under the statutory age of consent.[4]

4. **Dating Violence:** Violence committed by a person who is or has been in a social relationship of a romantic or intimate nature with the Complainant. The existence of such a relationship shall be determined based on a consideration of the following factors:

a. The length of the relationship;

b. The type of relationship; and

c. The frequency of interaction between the persons involved in the relationship.

5. **Domestic Violence:** Felony or misdemeanor crimes of violence committed by a current or former spouse or intimate partner of the Complainant, by a person with whom the Complainant shares a child in common, by a person who is cohabitating with or has cohabitated with the Complainant as a spouse or intimate partner, by a person similarly situated to a spouse of the Complainant under the domestic or family violence laws of Maryland, or by any other person against an adult or youth Complainant protected from that person's acts under the domestic or family violence laws of Maryland.

6. **Stalking:** Engaging in a course of conduct directed at a specific person that would cause a reasonable person to:

a. Fear for their own safety or the safety of others; or

b. Suffer substantial emotional distress.

B. **Other Sexual Misconduct** means the following conduct:

1. **Sexual Harassment** that occurred against a person outside of the United States or not within an Education Program or Activity, or otherwise does not fall under Title IX.

2. **Sexual Coercion:** The use of unreasonable pressure in an effort to compel another individual to initiate or continue sexual activity against the individual's will. A person's words or conduct are sufficient to constitute Sexual Coercion if they wrongfully impair another individual's freedom of will and ability to choose whether or not to engage in sexual activity. Sexual Coercion includes but is not limited to intimidation, manipulation, express or implied threats of emotional or physical harm, and/or blackmail. Examples of Sexual Coercion include but are not limited to causing the deliberate Incapacitation of another person; conditioning an academic benefit or employment advantage on submission to the sexual contact; threatening to harm oneself if the other party does not engage in sexual contact; or threatening to disclose an individual's sexual orientation, gender identity, gender expression, or other personal sensitive information if the other party does not engage in the sexual contact.

3. **Sexual Exploitation:** Taking non-consensual or abusive sexual advantage of another person for one's own advantage or benefit or for the advantage or benefit of anyone other than the person being exploited.

4. **Sexual Intimidation:** Threatening behavior of a sexual nature directed at another person, such as threatening to sexually assault another person or engaging in indecent exposure.

5. **Attempted Sexual Assault:** An attempt to commit Sexual Assault.

6. **Other Sex-Based Offenses:** Unwelcome sexual advances, unwelcome requests for sexual favors, or other behavior of a sexual or gender-based nature where:

Exhibit D, 8 of 38

5/11/23, 6:23 PM
University Policies | UMD | University of Maryland Policy and…
Case 1:23-cv-03507-RDB   Document 2-6   Filed 12/27/23   Page 9 of 38

a. Submission to such conduct is made either explicitly or implicitly a term or condition of an individual's employment, evaluation of academic work, or participation in a University-sponsored educational program or activity;

b. Submission to or rejection of such conduct by an individual is used as the basis for an academic, employment, or activity or program participation decision affecting that individual; or

c. Such conduct has the effect of unreasonably interfering with an individual's academic or work performance, i.e., it is sufficiently severe or pervasive to create an intimidating, hostile, humiliating, demeaning, or sexually offensive working, academic, residential, or social environment.

C. **Retaliation** means intimidating, threatening, coercing, or discriminating against, or otherwise taking an adverse action against an individual for the purpose of interfering with any right or privilege secured by law or University policy relating to Prohibited Conduct, or because an individual has made a report, filed a complaint, testified, assisted, participated or refused to participate in any manner in an investigation, proceeding, or hearing related to Prohibited Conduct. Adverse actions include but are not limited to impeding an individual's academic advancement; terminating, refusing to hire, or refusing to promote an individual; or transferring or assigning an individual to a lesser position in terms of wages, hours, job classification, or job security. Retaliation includes retaliatory harassment. Adverse actions, including charges against an individual for violations of other University policies that do not involve sex discrimination or Prohibited Conduct, but arise out of the same facts or circumstances as a report or complaint of sex discrimination, or a report or complaint of Prohibited Conduct, for the purpose of interfering with any right or privilege secured by law, constitutes Retaliation. However, charging an individual with a violation of other University policies for making a materially false statement in bad faith in the course of a proceeding does not constitute Retaliation, provided that a determination regarding responsibility, alone, is not sufficient to conclude that any Party made a materially false statement in bad faith. The exercise of rights protected under the First Amendment does not constitute Retaliation. The University will keep confidential, to the extent permitted by the Family Educational Rights and Privacy Act (FERPA), the identity of any individual who has made a report of Prohibited Conduct.

IX. Sanctions

A. As further explained in the Procedures, Sanctions for Respondents determined to have violated this Policy include, but are not limited to, the following:

1. Students. Students found in violation of this Policy are subject to Sanctions such as dismissal from the University (suspension or expulsion), removal from University housing, disciplinary probation, and other sanctions such as community service and mandatory and continuing participation in training on Prohibited Conduct and education programming, depending on the circumstances and nature of the violation.

2. Employees. Employees found in violation of this Policy are subject to Sanctions ranging from a written reprimand up to and including separation from employment, depending on the circumstances and nature of the violation.

X. Confidential Resources

Confidential resources on and off campus assist Parties in navigating potential advocacy, therapy, counseling, and emotional support services. If a person desires to keep an incident of Prohibited Conduct confidential, the person should speak with confidential resources.

Disclosures or reports made to individuals or entities other than confidential resources may not be confidential. For instance, should a member of the University community discuss an incident of Prohibited Conduct with a University administrator, supervisor, faculty member, graduate assistant, UMPD, athletic coach, athletic trainer, resident assistant, or first responder who is not a confidential resource, those persons are deemed Responsible University Employees and, as such, are obligated pursuant to this Policy to report the Prohibited Conduct to the Title IX Officer.

Unless there is a lawful basis for disclosure, such as reported child abuse or an imminent risk to health or safety, confidentiality applies when persons seek services from the following resources:

A. University Confidential Resources

Exhibit D, 9 of 38

5/11/23, 6:23 PM
University Policies | UMD | University of Maryland Policy and...
Case 1:23-cv-03507-RDB  Document 2-6  Filed 12/27/23  Page 10 of 38

**Campus Advocates Respond and Educate (CARE) to Stop Violence**

University Health Center

3983 Campus Drive

College Park, MD 20742

Telephone: 301-314-2222

24/7 Crisis Line (call) 301-741-3442

Website: **www.health.umd.edu/care**

Email: **uhc-care@umd.edu**

This service is a free and confidential resource that provides support, assistance, and advocacy to any member of the University community impacted by Prohibited Conduct. Its mission is to respond to incidents of Sexual Harassment and Other Sexual Misconduct.

**Faculty Staff Assistance Program (FSAP)**

University Health Center

3983 Campus Drive

College Park, MD 20742

Telephone: 301-314-8170 or 301-314-8099

Website: **health.umd.edu/fsap**

Email: Tom Ruggieri **ruggieri@umd.edu** or Joan Bellsey **jbellsey@umd.edu**

This program is a confidential assessment, referral, and counseling service staffed by trained mental health professionals. FSAP is available to all University employees and their family members at no charge. Faculty and staff may consult with a counselor for many different reasons, including for issues relating to Prohibited Conduct.

**University Counseling Center**

1101 Shoemaker Building

4281 Chapel Lane

College Park, MD 20742

Telephone: 301-314-7651

After Hours Crisis Support: 301-314-7651

Website: **www.counseling.umd.edu**

The University Counseling Center provides comprehensive psychological and counseling services to meet the mental health and developmental needs of students and others in the University community. Staffed by counseling and clinical psychologists, the Counseling Center offers a variety of services to help students, faculty, staff, and the community deal with issues concerning them.

**University Health Center (UHC)**

Medical & Behavioral Health

3983 Campus Drive

College Park, MD 20742

Telephone: 301-314-8106

Website: **https://health.umd.edu/behavioral-health**

The Mental Health Service is staffed by psychiatrists and licensed clinical social workers and offers confidential services including short-term psychotherapy, medication evaluations, crisis intervention, and group psychotherapy.

**Campus Chaplains**

Telephone: 301-405-8450 or 301-314-9866

Website: **http://thestamp.umd.edu/memorial_chapel/chaplains**

The Campus Chaplains represent faith communities and work collectively to serve the spiritual needs of all members of the University community. Contact information for Chaplains is listed on the website referenced above.

B. Confidential Resources Off-Campus include, but are not limited to:

**Domestic Violence and Sexual Assault Center at UM Prince George's Hospital**
3001 Hospital Drive, Cheverly, MD 20785
Help Hotline: 301-618-3154 – 24-hour Hotline or 24 hours/7 days a week
Website: **https://www.umms.org/capital/health-services/domestic-violence-sexualassault**

Persons who experience sexual assault can access a Sexual Assault Forensic Exam (SAFE) within 72 hours of an assault. Each Maryland county has a hospital that provides SAFE exams. A SAFE exam is available at UM Prince George's Hospital Center. To find a SAFE provider in other counties call 1-800-656-4653. SAFE exams and attention to medical needs are available without having to reveal a person's identity to the police.

**Maryland Coalition Against Sexual Assault (MCASA)**
Statewide Sexual Assault Information and Referral Helpline: 1-800-983-RAPE (4673)
Website: **https://mcasa.org/**

MCASA is a statewide coalition of 17 rape crisis and recovery centers that serve all Maryland jurisdictions. MCASA works to help prevent Sexual Assault, advocate for accessible, compassionate care for survivors of Sexual Violence, and works to hold offenders accountable.

**Maryland Network Against Domestic Violence (MNADV)**
4601 Presidents Drive, Suite 300
Lanham, MD 20706
Statewide Helpline: 1-800-MD-HELPS (43577) (Monday-Friday, 9:00 a.m. – 5:00 p.m.)
MNADV Office: 301-429-3601
Email: **info@mnadv.org**
Website: **https://mnadv.org/**

The Maryland Network Against Domestic Violence (MNADV or Network) is the state Domestic Violence coalition that brings together victim service providers, allied professionals, and concerned individuals for the common purpose of reducing intimate partner and family violence. The Network accomplishes this goal by providing education, training resources, and advocacy to advance victim safety and abuser accountability.

**RAINN National Sexual Assault Crisis Hotline**
Help Hotline: 800-656-HOPE (4673) – 24-hour Hotline or 24 hours/7 days a week
Website: **https://www.rainn.org/**

RAINN (Rape, Abuse & Incest National Network) is the nation's largest anti-sexual violence organization.

XI. Co-Occurring Criminal Action

Proceeding with a University resolution of Prohibited Conduct under this Policy and Procedures is independent of any criminal investigation or proceeding. Reporting to law enforcement does not preclude a person from proceeding with a report or Formal Complaint of Prohibited Conduct under this Policy. The University is required to conduct an investigation in a timely manner, which means, in most cases, the University will not wait until a criminal investigation or proceeding is concluded before conducting its own investigation, implementing Supportive Measures, and taking appropriate action.

However, at the request of law enforcement, the Title IX Officer may defer its fact gathering until the initial stages of a criminal investigation are complete. If such a request is made by UMPD, then UMPD will submit the request in writing and the Complainant will be notified. In addition, when possible, in cases where there is a co-occurring criminal investigation by UMPD, Prince George's County Police, or the local prosecutor's office, the Title IX Officer will work collaboratively and supportively with each respective agency within the parameters outlined above. The Title IX Officer will communicate any necessary delays in the University's investigative process to both parties in the event of a deferral.

XII. Rights of Parties

**Exhibit D, 11 of 38**

Parties will be treated with dignity, respect, and sensitivity by University officials during all phases of the process. The process for investigating and resolving reports and complaints must be free from conflict of interest or bias. Any individual designated by the University as a Title IX Officer, Investigator, Hearing Officer, Appellate Hearing Officer, or Informal Resolution facilitator must not have a conflict of interest or bias for or against Complainants or Respondents, generally, or for or against an individual Complainant or Respondent. To raise any concern involving bias or conflict of interest by the Title IX Officer, the Parties should contact the Vice President for Diversity and Inclusion, Georgina Dodge, Ph.D., via email at **gdodge1@umd.edu** upon discovery of the bias or conflict of interest. Concerns of bias or a potential conflict of interest by any other individual involved in the resolution process should be raised with the Title IX Officer upon discovery. The accompanying Procedures provide further guidance on concerns related to conflicts of interest and bias.

A. The accompanying Procedures are designed to allow for a fair and impartial investigation, as well as prompt and equitable proceedings and resolutions that provide an opportunity for Parties to be heard.

B. Parties will be given timely written notice of:

1. The reported violation, including the date, time and location, if known, of the alleged violation, and the range of potential Sanctions associated with the alleged violation;

2. Their rights and responsibilities under this Policy and information regarding other civil and criminal options;

3. The date, time, location, participants, and purpose of each Hearing, meeting, or interview that the Party is invited or expected to attend, with sufficient time for the Party to prepare to participate;

4. The final determination made by the Hearing Officer regarding whether a Policy violation occurred and the basis for the determination;

5. Any Sanction imposed, as required by law; and

6. The rights to appeal and a description of the appeal process.

C. Parties will be entitled to participate in the investigation and adjudication of the Formal Complaint in accordance with the Procedures. Parties will be provided with:

1. Access to the case file and evidence regarding the incident obtained by the University during the investigation or considered by the Hearing Officer, with personally identifiable or other information redacted as required by applicable law;

2. An opportunity to be heard through the process;

3. An opportunity to offer testimony at a Hearing;

4. An opportunity to submit evidence, witness lists, and suggest specific questions to be posed to the other Party during the investigation, or to the other Party at a Hearing through the Party's Advisor;

5. An opportunity to review testimony electronically or in a way in which the Parties are not required to be in the physical presence of one another;

6. An opportunity to review and provide written responses to draft and final investigation reports;

7. An opportunity to participate at a Hearing without being required to be in the physical presence of the other Party;

8. An opportunity to appeal a determination and/or Sanction; and

9. Notice, presented in an appropriate and sensitive format, before the start of the resolution process, of:

a. The Party's right to the assistance of an Advisor, including an attorney or advocate;

Case 1:23-cv-03507-RDB   Document 2-6   Filed 12/27/23   Page 13 of 38

    b. The legal service organizations and referral services available to the Party; and

    c. The Party's right to have a Support Person of the Party's choice at any Hearing, meeting, or interview.

XIII. False Statements

Knowingly making false statements or knowingly submitting false information under this Policy and Procedures is prohibited.

XIV. Legal Representation Fund for Title IX Proceedings (Students Only)

Student Complainants and Respondents may elect to retain an attorney to serve as their Advisor, though assistance by an attorney is not required. The Maryland Higher Education Commission (MHEC) has developed resources to assist current or former students in retaining an attorney to serve as an Advisor at no or low cost to the student. MHEC provides a list of licensed attorneys who have indicated that they may represent students in Title IX proceedings on a pro bono basis or for reduced legal fees. A student's attorney may seek reimbursement of certain legal costs and fees from MHEC's Legal Representation Fund for Title IX Proceedings, subject to the availability of funding. More information is available on MHEC's website.

XV. Emergency Removals

A. An emergency removal is for the purpose of addressing imminent threats posed to any person's physical health or safety, which might arise out of reported ProhibitedConduct. The University may remove a Respondent from a University Education Program or Activity on an emergency basis when the University:

    1. Undertakes an individualized safety and risk analysis;

    2. Concludes that there is an immediate threat to the physical health or safety of any student or other individual arising from the alleged Prohibited Conduct; and

    3. Provides the Respondent with notice and an opportunity to challenge the decision immediately following the removal.

B. Nothing herein prohibits the University from implementing Supportive Measures in accordance with this Policy and Procedures.

C. Student Respondents

A student Respondent will be offered an opportunity to meet with the Director of Student Conduct or the Title IX Officer or designee to review the reliability of the information and challenge the decision within five (5) Days from the effective date of the emergency removal.

The University may impose an interim disciplinary suspension on a student Respondent in accordance with the *Code of Student Conduct* for reasons not arising from the alleged Prohibited Conduct.

D. Other Respondents

Other Respondents will be offered an opportunity to meet with the Title IX Officer or designee to review the reliability of the information and challenge the decision within five (5) Days from the effective date of the emergency removal.

For staff and faculty Respondents, the University in consultation with the Title IX Officer, UMPD, an employee's supervisor and applicable campus or departmental Human Resource office may implement emergency removals from the University's Education Program or Activity, such as changing a Respondent's work responsibilities or work location or placing the Respondent on leave during the resolution process, following the process described above. The University retains the authority to implement Supportive Measures as appropriate.

XVI. Consensual Relationships and Professional Conduct

Exhibit D, 13 of 38

5/11/23, 6:23 PM
University Policies | UMD | University of Maryland Policy and…
Case 1:23-cv-03507-RDB   Document 2-6   Filed 12/27/23   Page 14 of 38

Sexual relationships that occur in the context of educational or employment supervision and evaluation present potential conflicts of interest. Relationships in which one party maintains a supervisory or evaluative responsibility over the other also reflect an imbalance of power, leading to doubt as to whether such relationships are truly consensual.

Because of the potential conflicts of interest, persons involved in consensual sexual relationships with anyone over whom the person has supervisory and/or evaluative responsibilities *must inform their supervisor(s)* of the relationship(s). Supervisory or evaluative responsibilities may be reassigned, as appropriate. While no relationships are expressly prohibited by this Policy, failure to self-report such relationships in a timely manner, as required by this Policy, may result in disciplinary action.

## XVII. Training

### A. Prevention and Awareness Education

The University will develop and implement preventive education, directed toward both employees and students, to help reduce the occurrence of Prohibited Conduct. At a minimum, these educational initiatives must contain information regarding what constitutes Sexual Harassment, definitions of consent and Prohibited Conduct, the University's Procedures, bystander intervention, risk reduction, and the consequences of engaging in Prohibited Conduct. These educational initiatives shall be for all incoming students and new employees. The University will also develop ongoing prevention and awareness campaigns for all students and employees addressing, at a minimum, the same information. Educational initiatives for employees shall comply with Md. Code Ann., State Pers. & Pens. § 2-203.1.

### B. Training for Personnel Involved in Response and Resolution

All persons involved in responding to or resolving Prohibited Conduct reports will participate in training in handling complaints of Prohibited Conduct under this Policy. The University will make these training materials publicly available on its website.

The University will ensure that Title IX Officers, Investigators, Hearing Officers, Appellate Hearing Officers, and any person who facilitates an Informal Resolution process, receive training on the following: the definition of Prohibited Conduct; the scope of the University's Education Program or Activity; how to conduct a resolution process including investigation, hearings, appeals, and Informal Resolution, as applicable; how to serve impartially, including by avoiding prejudgment of the facts at issue, conflicts of interest, and bias; technology to be used at a live hearing; and issues of relevance of questions and evidence, including when questions and evidence about the Complainant's sexual predisposition or prior sexual behavior are not relevant. Any materials used to train Investigators will not rely on sex stereotypes and will promote impartial resolutions of Formal Complaints under this Policy.

## XVIII. Records Retention

A. The University will maintain for a minimum of seven (7) years, records of the following:

1. **Investigations and Determinations.** Each Sexual Harassment investigation, including any determination regarding responsibility;

2. **Recordings and Transcripts.** Any audio or audiovisual recording or transcript required;

3. **Sanctions.** Any Sanctions imposed on the Respondent;

4. **Remedies.** Any Remedies provided to the Complainant designed to restore or preserve equal access to the Education Program or Activity;

5. **Appeals.** Any appeal and the result thereof;

6. **Informal Resolutions.** Any Informal Resolution and the result therefrom;

7. **Training Materials.** All materials used to train Title IX Officers, Investigators, Hearing Officers, and any person who facilitates an Informal Resolution process; and

Exhibit D, 14 of 38

5/11/23, 6:23 PM
University Policies | UMD | University of Maryland Policy and...
Case 1:23-cv-03507-RDB   Document 2-6   Filed 12/27/23   Page 15 of 38

8. **Supportive Measures.** Any Supportive Measures, taken in response to a report or Formal Complaint of Prohibited Conduct. In each instance, the University must document the basis for its conclusion that its response was not deliberately indifferent, and document that it has taken measures designed to restore or preserve equal access to its Education Program or Activity. If the University does not provide a Complainant with Supportive Measures, then it must document the reasons why such a response was not clearly unreasonable in light of the known circumstances. The documentation of certain bases or measures does not limit the University in the future from providing additional explanations or detailing additional measures taken.

XIX. External Government Agencies

Employee complaints relating to Prohibited Conduct may be directed to:

**Equal Employment Opportunity Commission (EEOC)**
GH Fallon Federal Building 31 Hopkins Plaza, Suite 1432
Baltimore, MD 21201
Telephone: 1-800-669-4000
Fax: 410-209-2221
TTY: 1-800-669-6820
Website: **https://egov.eeoc.gov/eas/**

**Maryland Commission on Civil Rights (MCCR)**
William Donald Schaefer Tower
6 Saint Paul Street, Ninth Floor
Baltimore, MD 21202-1631
Telephone: 410-767-8600
Fax: 410-333-1841
TTY: 410-333-1737
Website: **http://mccr.maryland.gov/**
E-mail: **mccr@maryland.gov**

Student or employee complaints relating to Prohibited Conduct may be directed to:

**Office for Civil Rights (OCR)**
U.S. Department of Education
The Wanamaker Building
100 Penn Square East, Suite 515
Philadelphia, PA 19107-3323
Telephone: 215-656-8541
Fax: 215-656-8605
TDD: 800-877-8339
Website: **http://www2.ed.gov/about/offices/list/ocr/docs/tix_dis.html**
E-mail: **OCR.Philadelphia@ed.gov**

UNIVERSITY OF MARYLAND PROCEDURES FOR INVESTIGATING AND RESOLVING ALLEGATIONS OF SEXUAL HARASSMENT AND OTHER SEXUAL MISCONDUCT

I. Applicability

These Procedures are part of the *VI-1.60(A) University of Maryland Policy and Procedures on Sexual Harassment and Other Sexual Misconduct* and are the exclusive procedures that govern the handling of all reports or complaints of Prohibited Conduct under this Policy. These Procedures apply to all members of the University community, including students, faculty, and staff. They also apply to contractors and other third parties who are engaged in any University Education Program or Activity, or who are otherwise interacting with the University, including but not limited to volunteers, vendors, guests, and visitors.

Processes for handling reports and complaints of Prohibited Conduct may recognize the various roles the Parties play at the institution for the

purposes of considering Supportive Measures, Remedies, Sanctions and Disciplinary Actions, and appeal procedures. The Office of Civil Rights & Sexual Misconduct (OCRSM) will assess the role of the Parties on a case by case basis for this purpose. In cases where the Parties exist in multiple roles at the institution, the process may impact them in any and all roles in which they operate, for the purposes of determining appropriate Supportive Measures, Remedies, and Sanctions.

II. Anticipated Timelines

The University's goals are to provide equal educational opportunities, promote campus safety, and remedy the effects of Prohibited Conduct. Good faith efforts will be made to complete Informal Resolutions, investigations and the adjudication process, if any, in a prompt, fair, and impartial manner. The OCRSM will conduct any investigation as promptly as possible under the circumstances, taking into account the complexity of the allegations, the complexity of the investigation and resolution, the severity and extent of the alleged misconduct, the number and availability of witnesses, the University's calendar, and/or other unforeseen circumstances. The University seeks to take appropriate action, including investigation and resolution of Formal Complaints, generally within one hundred twenty (120) Days from when the Formal Complaint is filed, by balancing principles of thoroughness and fundamental fairness. An extension of the timeframe may be necessary or granted for good cause in order to ensure the integrity and thoroughness of the investigation.

The Title IX Officer or designee may extend the timeframes set forth in this Policy and Procedures for good cause, with written notice of the extension to both Parties and the reason(s) for the delay. Written requests for delays by Parties may be considered. Factors considered in granting or denying an extension may include considerations such as, but not limited to, the following: the absence of a Party, a Party's Advisor, or a witness and/or the need for language assistance or accommodations of disabilities.

III. Right to Support Person and Advisor

A Party may be accompanied at any meeting held by the Title IX Officer or designee under these Procedures by up to two (2) people, including one (1) Support Person, and/or one (1) Advisor. When a Party wishes to be accompanied by a Support Person or Advisor to a meeting, the Party must notify the OCRSM or the Title IX Officer or designee in advance. Parties may select a Support Person or Advisor at any point before the conclusion of the resolution process. If a Party does not have an Advisor prior to a Hearing, the University will provide an Advisor of the University's choice to conduct cross-examination on behalf of that Party. In such cases, the Party has the right to request a change in their University-provided Advisor; the Title IX Officer or designee will determine whether such a request can be accommodated given the constraints of the Hearing process.

Throughout the process, the Title IX Officer or designee will communicate and correspond directly with the Parties, not indirectly through a Support Person or Advisor.

Prior to meetings and hearings, all Support Persons and Advisors must review non-Party participation requirements, which define their respective roles, appropriate decorum, and confidentiality obligations relative to the proceedings. These requirements may be viewed on the OCRSM website and may be obtained from the Title IX Officer or designee. Parties must ensure that Support Persons and Advisors follow these non-Party participation requirements.

In addition to the right to a Support Person and an Advisor, if the OCRSM or the Title IX Officer determines that a Party needs language assistance in order to fully engage in the process, accommodations will be made to allow for language assistance throughout the investigation and resolution process. Other similar accommodations including accommodations provided or arranged through the University's Accessibility and Disability Service (ADS) may be requested and considered throughout the process.

IV. Notification of Meetings, Interviews, and Hearings

Throughout the resolution process, the University will provide Parties and witnesses with written notification of the date, time, location, participants, and purpose of all hearings, investigative interviews, or other meetings to which they are invited or expected to participate. The written notification will be provided with sufficient time for the individual to prepare.

V. Report Intake and Formal Complaint

Exhibit D, 16 of 38

A. Receipt of Report of Prohibited Conduct

Upon receipt of a report alleging Prohibited Conduct from a Complainant, OCRSM will provide written acknowledgement of receipt of the report to the Complainant, if known, and include: a copy of this Policy and Procedures, options under the resolution process, and the Notice of Rights and Responsibilities.

The Complainant will be informed of available community and campus resources and services; available Supportive Measures as specified in Section V.C of these Procedures; their right to a Support Person and the Support Person's role; their right to an Advisor and the Advisor's role; their right to file a report with law enforcement; and the University's prohibition against Retaliation.

If the report is received from someone who is not the Complainant or the Respondent, OCRSM will provide written acknowledgement of receipt of the report and take appropriate action as the information provided allows.

Receipt of a report alleging Prohibited Conduct shall not constitute the filing of a Formal Complaint under this Policy.

As explained more fully below, the Complainant may ask OCRSM to take no further action beyond offering Supportive Measures, or they may file a Formal Complaint. Requests to take no further action will be assessed by the Title IX Officer or designee in alignment with Section V.E below.

B. Intake and Initial Assessment

OCRSM will contact the Complainant to conduct an intake and initial assessment, which will determine whether the reported conduct, if substantiated, would constitute a potential violation of this Policy. The Complainant can choose whether or not to participate with the intake and initial assessment process. If the Complainant opts not to participate, OCRSM may be limited in its ability to assess the report. The Complainant will have an opportunity to ask questions about options and resources and seek additional information. OCRSM will attempt to gather information that will enable OCRSM, in consultation with other appropriate University offices, to:

1. Assess a Complainant's request for Supportive Measures;

2. Assess the nature and circumstances reported;

3. Assess jurisdictional concerns regarding each Party;

4. Assess the safety of the Complainant and of the University community;

5. Implement any appropriate Supportive Measures;

6. Assess for pattern evidence or other similar conduct by the Respondent as relevant to the safety assessment;

7. Assess the Complainant's expressed preference regarding resolution, including any request that no further action be taken;

8. Assess any request by the Complainant for confidentiality or anonymity; and

9. Assess the reported conduct for possible referral to UMPD for a timely warning under the Clery Act.

When the initial assessment determines the alleged conduct would not constitute a potential violation under this Policy if substantiated, the Title IX Officer may try to resolve an issue without the filing of a Formal Complaint. The alleged conduct may also violate other University policies, and the report may be referred to another University process and/or office, including but not limited to the following: *VI-1.00(B) University of Maryland Non-Discrimination Policy and Procedures, V-1.00(B) University of Maryland Code of Student Conduct*, the Office of Student Conduct, University Human Resources, and/or the Office of Faculty Affairs, as appropriate.

C. Supportive Measures

OCRSM, in consultation with other appropriate University officials, facilitates Supportive Measures, which are available to the Parties upon

Exhibit D, 17 of 38

5/11/23, 6:23 PM                    University Policies | UMD | University of Maryland Policy and...

Case 1:23-cv-03507-RDB   Document 2-6   Filed 12/27/23   Page 18 of 38

receiving a report or Formal Complaint alleging Prohibited Conduct. OCRSM will consider the Parties' wishes with respect to planning and implementing the Supportive Measures. OCRSM will maintain the reasonable confidentiality of the Supportive Measures, provided that this does not impair the ability to provide the Supportive Measures. OCRSM will act to ensure as minimal an academic and employment impact on the Parties as possible and implement Supportive Measures in a way that does not unreasonably burden either Party.

Supportive Measures include, but are not limited to:

1. Academic Accommodations

    a. Assistance in transferring to another section of a lecture or laboratory

    b. Assistance in arranging for incompletes

    c. Assistance with leave of absence

    d. Assistance with withdrawal from coursework

    e. Assistance with withdrawal from campus

    f. Assistance with communicating with faculty

    g. Rearranging class schedules

    h. Re-scheduling exams

    i. Extensions of academic deadlines

    j. Re-taking a course

    k. Dropping a course

    l. Academic support such as tutoring or other course/program related adjustments

    m. Facilitating adjustments so complainants and respondents do not share same classes

2. Housing Accommodations

    a. Facilitating changes in on-campus housing location to alternate housing

    b. Assistance in exploring alternative housing off-campus

3. Employment Accommodations

    a. Arranging for alternate University employment

    b. Arranging different work shifts temporary assignment, if appropriate, to other work duties and responsibilities, or other work locations, or other work groups/teams or alternative supervision/management; and

    c. Extensions of work deadlines.

4. Care and Support

    a. Facilitating assistance for an individual to obtain medical, healthcare, advocacy, and therapy services;

b. Referral to the Faculty Staff Assistance Program (FSAP);

c. Referral to Campus Advocates Respond and Educate (CARE) to Stop Violence; and

d. Referral to community-based providers.

5. Community Education

a. Education to the community or community subgroup(s);

b. Training; and

c. Bystander Intervention Program

6. Safety

a. Providing campus safety escorts;

b. Providing transportation accommodations;

c. Increased security and monitoring of certain areas of the campus;

d. Transportation and parking arrangements;

e. Assistance in making a report to law enforcement or obtaining a protective order;

f. Safety planning, and

g. Assisting a person in requesting that directory information be removed from public sources

7. University Referrals

a. Referral to Visa and Immigration assistance

b. Assistance in arranging appointments with University resources

c. Assistance with exploring changes in class and extra-curricular schedules

d. Referral to student financial aid counseling

8. Other

a. No Contact Order; and

b. Denial of Access to campus grounds and/or buildings

OCRSM will promptly inform the Respondent of any Supportive Measures that will directly impact the Respondent.

The Title IX Officer or designee retains discretion to provide and/or modify any Supportive Measures based on all available information. Supportive Measures will remain in effect as necessary.

D. Filing of a Formal Complaint

A Formal Complaint alleging Prohibited Conduct against a Respondent may be filed with the Title IX Officer in person, by mail, or by

Exhibit D, 19 of 38

Case 1:23-cv-03507-RDB   Document 2-6   Filed 12/27/23   Page 20 of 38

electronic mail, by using the contact information listed in Section IV of the Policy.

Should the Complainant decide to file a Formal Complaint, the Title IX Officer will review the Formal Complaint and determine whether it should be dismissed or move into the resolution process (see Section III.F of these Procedures).

E. Special Considerations: Requests for Anonymity and to Not Proceed

If a Complainant does not wish to disclose their personally identifiable information (i.e. wishes to remain anonymous) and/or does not wish to file a Formal Complaint, the Complainant may make such a request to the Title IX Officer or designee. Regardless of their choice, the Title IX Officer or designee will still offer Supportive Measures to the Complainant as appropriate. The Complainant retains the ability to file a Formal Complaint at any time.

The Title IX Officer has ultimate discretion over whether the University proceeds, and the Title IX Officer may sign a Formal Complaint to initiate the resolution process when appropriate. The Title IX Officer's decision to sign a Formal Complaint will be based on whether:

1. An investigation is needed to comply with legal anti-discrimination requirements or is otherwise the most appropriate and effective response;

2. The effect that non-participation by the Complainant may have on the availability of evidence and the ability to pursue the resolution process fairly and effectively; and/or

3. A violence risk assessment shows a compelling risk to health and/or safety which requires the University to pursue formal action to protect the University community. A compelling risk to health and/or safety may result from any combination of the following:

   a. Evidence of patterns of misconduct;

   b. Predatory conduct, threats, abuse of minors;

   c. Allegations that the Prohibited Conduct was committed by multiple persons; and/or

   d. Use of weapons and/or violence.

      When the Title IX Officer signs the Formal Complaint, the Title IX Officer does not become the Complainant and is not otherwise a Party.

      Overall, the University's ability to remedy and respond to the Formal Complaint may be limited if the Complainant does not want the University to proceed with the resolution process. The goal is to provide the Complainant with the opportunity to file a Formal Complaint and participate while balancing the University's obligation to protect its community.

F. Designation of Prohibited Conduct and Dismissal of Formal Complaint

As indicated above in Section V.B of this Policy, the Title IX Officer or designee will gather information to assess whether the reported conduct, if substantiated, would constitute a potential violation of the Policy. Title IX requires the University to determine whether the reported conduct is designated as Title IX-based Prohibited Conduct. A decision not to designate the alleged conduct as Title IX-based Prohibited Conduct constitutes a mandatory dismissal of the case for Title IX purposes[5]. However, this dismissal does not prevent the University from investigating and resolving the Formal Complaint through these Procedures if the reported conduct would meet the definition of Other Sexual Misconduct or Retaliation in Sections VIII.B and VIII.C of this Policy, if substantiated. The University will investigate and adjudicate these non-Title IX-based forms of Prohibited Conduct using these same Procedures. Dismissal under this Policy and Procedures also does not preclude a referral to another University process and/or office as indicated in Section V.B, as may be appropriate in cases where the reported conduct may violate other University policies.

Upon receipt of a Formal Complaint, the Title IX Officer or designee will promptly send simultaneously to both Parties the *Written Notice of Formal Complaint* described in Section VI.C.3 of these Procedures, and a *Written Notice of Designation* of:

Exhibit D, 20 of 38

1. The decision about whether to designate the alleged conduct as Title IX-based Prohibited Conduct, and the reasons for this decision;

2. The decision to proceed with the resolution process or to dismiss the Formal Complaint as described below; and

3. The Parties' rights to appeal the designation and/or dismissal decision.

**Title IX-based Prohibited Conduct**

The Title IX Officer or designee *must* designate the alleged conduct as Title IX-based Prohibited Conduct if:

1. The alleged conduct would constitute Sexual Harassment within an Education Program or Activity against a person in the United States if substantiated; and
2. The Complainant is participating or attempting to participate in an Education Program or Activity at the time the Complainant files a Formal Complaint or when the Title IX Officer files a Formal Complaint because the alleged conduct meets the above definition.

**Mandatory Dismissal**

The Title IX Officer or designee *must* dismiss a Formal Complaint or any allegations therein if at any time during the Resolution Processes it is determined that:

1. The conduct alleged in the Formal Complaint, if substantiated, would not constitute Prohibited Conduct; or

2. The allegations in the Formal Complaint do not fall within the University's jurisdiction.

**Permissive Dismissal**

The Title IX Officer or designee *may* dismiss a Formal Complaint or any allegations therein if at any time during the Resolution Processes:

1. A Complainant notifies the Title IX Officer or designee in writing that the Complainant requests to withdraw the Formal Complaint or any allegations therein; or

2. The Respondent is no longer enrolled in or employed by the University; or

3. Specific circumstances prevent the University from gathering evidence sufficient to reach a determination as to the Formal Complaint or allegations therein.

If the Respondent is not a member of the campus community or if they withdraw or leave during the process, the Title IX Officer or designee will determine whether the case should be dismissed or whether it should continue to be pursued in the absence of the Respondent. Decisions on whether to dismiss a case in these instances will be considered carefully. The Title IX Officer or designee will assess the effect that non-participation by the Respondent may have on the availability of evidence and the ability to pursue the resolution process fairly and effectively. If the Title IX Officer or designee determines that the case should be dismissed, the Title IX Officer or designee will still offer Supportive Measures to the Complainant as appropriate.

G. Appeal of Designation and/or Dismissal

Either Party may appeal the *Written Notice of Designation*. The bases for appeal are limited to procedural irregularity, new evidence, and conflict of interest as explained in Section VI.D.9.a of these Procedures. The process for the appeal is set forth in Section VI.D.9.c of these Procedures.

VI. Resolution Processes

A. Consolidation of Complaints

At the discretion of the Title IX Officer or designee, multiple reports may be consolidated into one Informal Resolution and/or investigation if

**Exhibit D, 21 of 38**

Case 1:23-cv-03507-RDB   Document 2-6   Filed 12/27/23   Page 22 of 38

the information related to each incident is relevant in reaching a resolution. Matters may be consolidated where the matters involve multiple Complainants, multiple Respondents, or related facts and circumstances involving the same Parties, including those arising out of the same or different events(s).

B. Informal Resolution Process

Informal Resolution may serve to address the alleged Prohibited Conduct as an alternative to proceeding to an investigation and Hearing. Informal Resolution can encompass a variety of approaches agreed to by the Parties including, but not limited to, mediation, Respondent acknowledgement of responsibility, and/or negotiated interventions and Remedies facilitated by the Title IX Officer or designee.

The purpose of Informal Resolution is to take appropriate action by imposing individual and community interventions and remedies designed to maximize the equal access to the Education Program or Activity, as well as to address the effects of the conduct on the larger University community.

1. Request for Informal Resolution

Either Party may request Informal Resolution, including their preferred approach of reaching a resolution, such as mediation, Respondent acknowledgement of responsibility, and/or negotiated interventions and Remedies. Both Parties and the Title IX Officer or designee must agree to the process in writing. Either Party may terminate an ongoing Informal Resolution at any time prior to reaching an agreement.

The Title IX Officer or designee has the discretion to determine whether a Formal Complaint is appropriate for Informal Resolution and which resolution approach is best utilized given the specifics of the Formal Complaint. The Title IX Officer or designee retains discretion to terminate an ongoing Informal Resolution process at any time, at which point the Title IX Officer or designee will determine appropriate next steps. The Title IX Officer or designee will inform both Parties simultaneously in writing of the reason(s) for terminating an Informal Resolution process.

2. Informal Resolution Not Permitted

Although the Title IX Officer or designee retains discretion to determine whether a Formal Complaint is appropriate for Informal Resolution in other cases, Informal Resolution is not permitted under the following circumstances:

a. Formal Complaints by a student alleging Sexual Harassment against an employee (staff or faculty); or

b. Formal Complaints alleging Sexual Assault or Sexual Coercion.

3. Informal Resolution Permitted

When Informal Resolution is utilized, the process is voluntary and is not a requirement or condition of continued enrollment or employment at the University.

In such case, Parties will receive a written *Notice of Informal Resolution* containing the following:

a. Summary of the allegations;

b. Notice that neither Party is required to accept responsibility for the alleged Prohibited Conduct, unless a Respondent chooses to do so;

c. Notice that there is no finding of a Policy violation or Sanction unless agreed to by the Respondent;

d. Notice that agreement to Informal Resolution is not a waiver of right to proceed with an investigation and Hearing;

e. Notice that until an Informal Resolution agreement is finalized, the Parties may, at any time, opt out of Informal Resolution, at which point the Formal Complaint would proceed or resume to investigation and Hearing, as appropriate;

Exhibit D, 22 of 38

f. Notice of any potential consequences resulting from participating in the Informal Resolution process, including whether records will be maintained or could be shared;

g. Notice that the reasonable confidentiality restrictions of the Informal Resolution process mean that information shared or obtained during this process cannot be used in an investigation and adjudication under these Procedures, if Informal Resolution fails;

h. Notice that if an Informal Resolution agreement is finalized and implemented, it precludes the Parties from resuming investigation and adjudication of a Formal Complaint arising from the same allegations; and

i. Notice that the results of Informal Resolution are not eligible for appeal.

4. Mediation and Other Informal Resolution

Informal Resolution, including mediation, must be conducted by a trained facilitator who guides the Parties in a confidential dialogue to reach an effective resolution, if possible. Information shared or obtained during this process cannot be used in an investigation and adjudication under these Procedures, if Informal Resolution fails. The trained facilitator may be internal or external to the University depending on the needs of the specific case as determined by the Title IX Officer or designee. Sanctions are not possible as a result of Informal Resolution unless the Parties agree to accept Sanctions and/or appropriate Remedies.

5. Negotiated Informal Resolution Interventions and Remedies

If agreed to by the Parties and determined appropriate by the Title IX Officer or designee, the following Informal Resolution interventions and Remedies may be utilized, including but not limited to:

a. Increased monitoring, supervision, and/or security at locations or activities where the Prohibited Conduct occurred or is likely to reoccur;

b. Targeted or broad-based educational programming or training for relevant individuals or groups;

c. Academic and/or housing modifications for either Party;

d. Workplace modifications for either Party;

e. Completion of projects, programs, or requirements designed to help the Respondent manage behavior, refrain from engaging in Prohibited Conduct, and understand why the Prohibited Conduct is prohibited;

f. Compliance with a No Contact Order;

g. Compliance with a Denial of Access;

h. Completion of community service hours over a specific period of time; and

i. Separation from the University.

The Title IX Officer or designee will work with the Offices of Student Conduct, Human Resources, and/or Provost/Faculty Affairs as needed to facilitate such negotiated interventions and Remedies.

6. Completion of Informal Resolution

When an Informal Resolution agreement is reached and the terms of the agreement are implemented, the matter is resolved and closed. Appeals by either Party are not permitted. The Title IX Officer or designee is responsible for ensuring compliance with the agreement.

In cases where an agreement is not reached and the Title IX Officer or designee determines that further action is necessary, or if either Party fails to comply with the terms of the Informal Resolution, the matter may be referred for an investigation and adjudication under

Exhibit D, 23 of 38

these Procedures, as appropriate.

The Parties will be provided with a written copy of the terms of the Informal Resolution agreement. The Title IX Officer or designee will maintain all records regarding Informal Resolution.

7. Respondent Acceptance of Responsibility

The Respondent may accept responsibility for all or part of the alleged Policy violation(s) at any point during the resolution process. If the Respondent wishes to accept responsibility and Informal Resolution is not prohibited under Section VI.B.2 above, the Title IX Officer may initiate the Informal Resolution process, after obtaining both Parties' voluntary, written consent, and after providing the required *Notice of Informal Resolution* if it has not already been provided.

Any remaining allegations that are not resolved through the Informal Resolution process may proceed to investigation or Hearing, as appropriate.

C. Investigation Process

When investigating a Formal Complaint, the below procedures will be utilized. However, at any time prior to reaching a determination regarding responsibility, an Informal Resolution may occur if appropriate conditions are satisfied (see Section VI.B of these Procedures).

1. Presumption of Not Responsible

Respondents are presumed not responsible for any and all allegations until the conclusion of the investigation and adjudication process. At the conclusion of the process, the University provides the Parties with the written determination of the final outcome following any appeal if an appeal is filed, or after the date by which an appeal must be filed has passed under Section VI.D.9.c.ii of these Procedures.

2. Notice of Rights and Responsibilities

The Complainant and Respondent are required to review and sign their *Notice of Rights and Responsibilities*. The Investigator will verify that the Parties have received, reviewed, and signed their *Notice of Rights and Responsibilities* and have been provided with a copy of this Policy and Procedures to ensure the Parties have adequate information about the investigation and adjudication. The Investigator will also ensure that both Parties have had an opportunity to ask and receive answers to any questions. For staff, faculty, and third parties, the notice will be provided by the Title IX Officer or designee. For students, the notice will be provided by the Office of Student Conduct (OSC).

The *Notice of Rights and Responsibilities* will include but is not limited to the following:

a. Right to be treated with dignity and respect by all University officials;

b. Right for information to only be shared with others on a need-to-know basis in order to facilitate a resolution;

c. Right to be informed of available Supportive Measures;

d. Right to be informed of available community and campus resources and services;

e. Right to a Support Person and/or an Advisor;

f. Right to regular updates on the status of the investigation and/or resolution; and

g. Prohibition against Retaliation and guidance about reporting any retaliatory conduct.

3. Written Notice of Formal Complaint

After a Formal Complaint is filed, the Parties will be provided a Written *Notice of Formal Complaint*, which will include the following:

**Exhibit D, 24 of 38**

a. The University's complete Policy and Procedures as set forth herein;

b. The allegations of Prohibited Conduct as defined by this Policy;

c. The identities of the Parties involved, if known;

d. The date(s), location(s), and time(s) of the alleged incident(s), if known;

e. A statement that the Respondent is presumed not responsible for the alleged conduct and that a determination regarding responsibility is made at the conclusion of the adjudication process;

f. Information indicating that the Parties may have an Advisor of their choice, who may be an attorney and who may inspect and review evidence;

g. Notice that if the Parties do not select an Advisor of their choice, the University will provide a trained Advisor prior to the pre-hearing meeting for purposes of performing cross-examination on behalf of that Party at the Hearing;

h. Information indicating that the Parties may have a Support Person of their choice;

i. Advisement that knowingly making false statements or knowingly submitting false information during the investigation and adjudication process is prohibited under Section XIII of this Policy;

j. Notice that if the University decides to investigate additional allegations about either Party that are not in the original notice, the Parties will receive an amended notice containing the additional allegations; and

k. The range of potential Sanctions associated with the alleged Prohibited Conduct.

4. Role of the Investigator

The Title IX Officer or designee will designate an Investigator(s) from OCRSM and/or an external Investigator to conduct a prompt, thorough, fair, and impartial investigation. The Investigator is responsible for conducting an objective investigation, including objectively evaluating all inculpatory and exculpatory evidence. The Investigator will not make any credibility determinations based on a person's status as a Complainant, Respondent, or witness.

5. Overview of the Investigation

a. Standard of Proof

The standard of proof for a determination of responsibility under this Policy is Preponderance of the Evidence. The burden of proof and the burden of gathering evidence sufficient to reach a determination regarding responsibility remain with the University and not with the Parties.

b. Evidence

The investigation is an impartial fact-gathering process. It is an important stage of the process in which both Parties have an opportunity to be heard regarding the Formal Complaint. During the investigation, the Investigator will speak separately with both Parties and any other individuals who may have relevant information. No audio or video recording of any kind is permitted during such interviews. The Parties will each have an equal opportunity to present witnesses (including fact and expert witnesses, at their own expense) and any other relevant evidence.

Evidentiary materials, regardless of relevance, may be provided by a Party; however, the Investigator will determine whether and how the evidence and witnesses submitted by the Parties is directly related to the allegations and whether and how that information will be factored into the investigation. The Investigator will also gather any available physical evidence or documents, including prior statements by the Parties or witnesses, communications between the Parties, email messages, text messages, social media

Exhibit D, 25 of 38

materials, and other records, as appropriate and available.

The University does not restrict the ability of Parties to discuss allegations that have been reported or to gather and present evidence. However, the University has a compelling interest in protecting the integrity of the resolution process, protecting the privacy of Parties and witnesses, and protecting Parties and witnesses from harassment, intimidation, or Retaliation during the resolution process. To further these goals, witnesses and Parties are encouraged to limit their sharing of information about a matter (including the allegations, the identities of the Parties and witnesses, and the questions asked in interviews) while the resolution process is ongoing. Parties and witnesses are also cautioned not to discuss the allegations in a manner that constitutes Retaliation or unlawful conduct.

c. Special Considerations

Information related to the prior sexual history of either Party is generally not relevant to the determination of a Policy violation. However, prior sexual history between the Parties may be relevant in very limited circumstances. For example, where there was a prior or ongoing consensual relationship between the Parties, and where Consent is at issue in the case at hand, evidence as to the Parties' prior sexual history as it relates to Consent may be relevant to assess the manner and nature of communications between the Parties. However, the mere fact of a current or previous dating or sexual relationship, by itself, is not sufficient to show Consent as defined in Section VII of this Policy. Sexual history will never be used for purposes of illustrating either Party's individual character or reputation. The Investigator will determine the relevance of prior sexual history and inform the Parties if information about the Parties' sexual history with each other is deemed relevant.

The University cannot access, consider, disclose, or otherwise use a Party's record(s) that are made or maintained by a physician, psychiatrist, psychologist, or other recognized professional or paraprofessional acting in the capacity thereof or assisting in that capacity, and which are made and maintained in connection with the provision of treatment to the Party. However, a Party can provide voluntary, written consent to use the above-mentioned material for the investigation and adjudication. Such consent shall be specifically limited to the information provided. At no time shall consent be construed as consent to access any other information in the Party's records. If a Party provides consent to use such material during the investigation stage, and the evidence is directly related to the Formal Complaint, the material will be shared with the other Party as part of the evidence made available for their inspection and review.

The Investigator will not require, allow, rely upon, or otherwise use questions or evidence that constitute or seek disclosure of information protected under a legally recognized privilege, unless the person holding such privilege has waived the privilege.

d. Draft Investigation Report

At the conclusion of the investigation, the Investigator will provide a written investigation report (the *Draft Investigation Report*) that provides a case timeline, appropriately summarizes the information gathered (including, but not limited to, the names of witnesses and summaries of their statements), and outlines evidence that is directly related to the Formal Complaint.

e. Notice of Opportunity to Review the Draft Investigation Report

Before the investigation report is finalized, the Parties will be given an equal opportunity to review and meaningfully respond to the *Draft Investigation Report*. The Investigator will also send to the Party, and the Party's Advisor, if any, all evidence obtained that is directly related to the Formal Complaint, including evidence upon which the University does not intend to rely in reaching a determination regarding responsibility, and inculpatory or exculpatory evidence, whether obtained from a Party or other source, for inspection and review. This evidence may be provided using electronic means that precludes downloading, forwarding, or otherwise sharing. Parties will have ten (10) Days to review the *Draft Investigation Report* and submit a written response, including comments, information, and/or questions to the Investigator.

If there is any new or additional information to be provided by either Party, it must be presented to the Investigator at this time. Any and all information for consideration by the Hearing Officer must be provided to the Investigator during the investigation phase of the process and otherwise will not be allowed during the Hearing. If a Party requests that additional information be considered

Exhibit D, 26 of 38

during the Hearing, the Party must clearly demonstrate that such information was not reasonably available to the Parties at the time of the investigation, or that the evidence has significant relevance to a material fact at issue in the investigation. If a Party provides or identifies evidence after the Final Investigation Report is issued, and the Hearing Officer determines that it was reasonably available to them during the investigation process, the Hearing Officer has the discretion to choose to consider such information, and may draw a negative inference from the Party's delay in providing or identifying the evidence. The Hearing Officer may, at their discretion, instruct that the investigation is re-opened to consider the evidence. In such cases, the evidence will be made available to the Parties for their review and comment prior to the Hearing.

If further investigation is warranted based on the Parties' written responses, the Investigator will continue the investigation, as needed. The Investigator will consider the Parties' written responses prior to completing the *Final Investigation Report.*

    f. Final Investigation Report

Upon timely receipt of the Parties' written responses, or after the ten (10) Day review period has lapsed with no written responses, the investigation ends. The Investigator will complete the *Final Investigation Report*. The *Final Investigation Report* will contain summaries of all relevant information obtained throughout the course of the investigation and may contain an analysis of fact.

The *Final Investigation Report* will be submitted to the Hearing Officer.

## D. Adjudication Process

### 1. Review of Final Investigation Report

    a. Following completion of the *Final Investigation Report*, the Title IX Officer or designee will meet separately with each Party and their Advisor, if applicable. If a Party does not identify their Advisor at this time, the University will provide an Advisor for purposes of the pre-hearing meeting and Hearing.

At the meeting, the Title IX Officer or designee will provide each Party and each Party's Advisor, if any, with a confidential copy of the *Final Investigation Report*, including all attachments, and explain the next steps in the process. The *Final Investigation Report* may be provided using electronic means that precludes downloading, forwarding, or otherwise sharing. If a Party does not have an Advisor present at this meeting, a confidential copy of the *Final Investigation Report* will be provided to the Party's Advisor prior to the pre-hearing meeting.

    b. Each Party will be notified that they have ten (10) Days to submit a written response to the *Final Investigation Report* to the Title IX Officer or designee, which will be shared with and considered by the Hearing Officer. Exceptions to the 10-Day timeframe may be granted by the Title IX Officer or designee during times when the University is not in session or in other circumstances. After ten (10) Days have elapsed with no response and no request for an extension, the process will move forward without a written response. All written responses will be shared with the other Party prior to the Hearing.

    c.  In order to protect the privacy of all individuals involved, all materials shared with the Parties are considered confidential and should not be publicly disclosed or released.

### 2. Hearing Case File

Before the pre-hearing meeting and Hearing, the Title IX Officer or designee will provide the Parties, their Advisors, and the Hearing Officer with access to the complete hearing case file. The hearing case file will include:

    a. The complete *Final Investigation Report*;

    b. All directly related evidence subject to the Parties' inspection and review as explained in Section VI.C.5.e of these Procedures; and

    c. The Parties' written responses to the *Final Investigation Report*.

**Exhibit D, 27 of 38**

5/11/23, 6:23 PM                    University Policies | UMD | University of Maryland Policy and...

Case 1:23-cv-03507-RDB   Document 2-6   Filed 12/27/23   Page 28 of 38

3. Role of the Hearing Officer

    a. The Hearing Officer is responsible for maintaining an orderly, fair, and respectful Hearing. The Hearing Officer has broad authority to respond to disruptive behaviors, including adjourning the Hearing or excluding disruptive persons, and will ensure efficient administration of the Hearing. The Hearing Officer will have discretion to determine the structure of the Hearing and how questioning is conducted, including but not limited to the order of witnesses to be questioned, if any, consistent with these Procedures.

    b. The Hearing Officer will objectively evaluate all relevant evidence, including both inculpatory and exculpatory evidence, and will not make any credibility determinations based on a person's status as a Complainant, Respondent, or witness.

    c. The Hearing Officer is the decision maker responsible for determining whether or not the Policy was violated. The Hearing Officer is also the decision maker responsible for determining any appropriate Sanctions and other responsive actions imposed on the Respondent, if any, upon a finding of responsibility.

4. Pre-Hearing Meeting

    a. The Hearing Officer will convene a separate meeting with each Party and their Advisor and Support Person, if applicable, to:

        i. Plan for the Hearing;

        ii. Identify their Advisor and, if applicable, Support Person;

        iii. Review the Procedures to be followed at the Hearing;

        iv. Discuss the process of raising a concern that the Hearing Officer has an impermissible bias or conflict of interest as set forth in Section VI.D.5.b.v, below;

        v. Review the complete list of witnesses that will be asked to appear in accordance with paragraph (c), below;

        vi. Discuss any technology that will be used at the Hearing and how to operate such technology;

        vii. Discuss the time allotted for the Hearing and any time limitations; and

        viii. Answer any other questions or remaining concerns prior to the Hearing.

    b. Attendance at the pre-hearing meeting is strongly encouraged for each Party. A Party's decision not to participate may result in decisions regarding witnesses and procedural matters being made without their input. If neither Party attends the pre-hearing meeting, the Hearing Officer will determine all procedural matters in advance of the Hearing.

    c. Generally, the University will request that all witnesses interviewed during the investigation attend the Hearing for questioning. However, the Hearing Officer, only with full agreement of the Parties, may decide through the pre-hearing meeting(s) that certain witnesses do not need to be invited to the Hearing if their testimony can be adequately summarized by the Investigator(s) in the Final Investigation Report or during the Hearing. Any such agreement will be confirmed in writing by both Parties. The Hearing Officer has the discretion to request the attendance of other witnesses in accordance with Section VI.D.6.h.

5. Written Notice of Hearing

    a. The Title IX Officer or designee will use reasonable efforts to consult with all involved individuals, including the Complainant, Respondent, Support Persons, Advisors, and witnesses, in order to schedule the Hearing.

    b. Parties will receive a *Written Notice of Hearing* at least ten (10) Days in advance of the Hearing. The Notice will include pertinent information about the Hearing, its procedures, and the rights and responsibilities of the Parties, and will include the information below.

Exhibit D, 28 of 38

i. The Notice will include a description of the charges of Policy violation(s), a copy of the applicable Hearing procedures, and a statement of the potential Sanctions/responsive actions that could result.

ii. The Hearing date, time, location, purpose, and the list of participants, including the complete list of witnesses requested to attend the Hearing for questioning, will be provided.

iii. The Hearing Officer may reschedule the Hearing if necessary to facilitate the participation of Parties and witnesses, or for other reasons that they deem to be compelling.

iv. Each Party must have an Advisor present at the Hearing, without exception. If a Party does not have an Advisor present at the Hearing, the University will provide one free of charge for the purpose of conducting cross-examination on behalf of that Party at the Hearing.

v. The Parties may object to the Hearing Officer on the basis of demonstrated bias or conflict of interest for or against Complainants or Respondents, generally, or for or against the individual Complainant or Respondent. Objections must be raised with the Title IX Officer or designee at least two (2) Days prior to the Hearing.

vi. A Party's participation is voluntary and a Party may choose not to appear at the Hearing. However, if any Party does not appear at the scheduled Hearing after receiving appropriate notice, the Hearing will be held in their absence, unless there are extenuating circumstances as determined by the Hearing Officer. Any statements given by the Party prior to the Hearing will not be considered by the Hearing Officer (though the Hearing Officer may continue to consider and rely on alleged verbal conduct that constitutes all or part of the underlying alleged Prohibited Conduct itself). The Hearing Officer will make a determination regarding responsibility and any sanctions, if appropriate, without the participation of the absent Party.

vii. The hearing case file, including all directly related evidence subject to the Parties' inspection and review as explained in Section VI.D.2 of these Procedures, will be available at the Hearing to give each Party equal opportunity to refer to evidence during the Hearing, including for purposes of cross-examination.

viii. A copy of all the materials provided to the Hearing Officer about the matter will be shared with the Parties, unless they have been provided already.

ix. The Parties may contact the Title IX Officer or designee to arrange any disability accommodations, language assistance, and/or interpretation services that may be needed at the Hearing. Such accommodations must be requested at least seven (7) Days prior to the Hearing.

x. The Notice will indicate whether the Parties may bring mobile phones or other devices into the Hearing, and any related restrictions.

xi. The Hearing Officer may conduct the Hearing with all Parties and witnesses physically present in the same geographic location or with any or all Parties, witnesses, and other participants virtually present at the Hearing. Technology enabling virtual participation must allow participants simultaneously to see and hear each other.

xii. At either Party's request, the University will provide the Parties with separate rooms or separate virtual rooms. The University will use technology enabling the Hearing Officer and Parties to simultaneously see and hear the Party or the witness who is answering a question.

xiii. The Hearing is closed to the public.

xiv. The Hearing will be recorded by the University (either audio or audio-visual). No other recordings are permitted. Recordings are maintained by the University. Parties may submit a written request to the Title IX Officer to inspect and review the recording after the Hearing.

6. Hearing Procedures

**Exhibit D, 29 of 38**

Case 1:23-cv-03507-RDB   Document 2-6   Filed 12/27/23   Page 30 of 38

a. The Hearing does not take place within a court of law and is not bound by formal rules of evidence that apply to court proceedings.

b. The Hearing Officer will preside over the Hearing.

c. The Investigator will summarize the *Final Investigation Report* and clarify any information in the Final Investigation Report.

d. Each Party may provide a brief opening statement.

e. Each Party's Advisor will be provided an opportunity to cross-examine the other Party and any witnesses. Questioning will be conducted directly, orally, and in real time by the Party's Advisor only. Parties may not question each other or witnesses directly.

f. The hearing case file and all directly related evidence subject to the Parties' inspection and review as explained in Section VI.D.2 of these Procedures will be available at the Hearing to give each Party equal opportunity to refer to evidence during the Hearing, including for purposes of cross-examination.

g. Any and all information for consideration by the Hearing Officer must be provided to the Investigator during the investigation phase of the process and otherwise will not be allowed during the Hearing.

   i. If a Party requests that additional information be considered during the Hearing, the Party must clearly demonstrate that such information was not reasonably available to the Parties at the time of the investigation, or that the evidence has significant relevance to a material fact at issue in the investigation.

   ii. If a Party provides or identifies evidence after the Final Investigation Report is issued, and the Hearing Officer determines that it was reasonably available to them during the investigation process, the Hearing Officer has the discretion to choose to consider such information, and may draw a negative inference from the Party's delay in providing or identifying the evidence.

   iii. The Hearing Officer may, at their discretion, instruct that the investigation be re-opened to consider the evidence. In such cases, the evidence will be made available to the Parties for their review and comment prior to the Hearing.

h. The Hearing Officer will generally exclude from the Hearing any witnesses who were not previously identified during the investigation and requested to attend by the University.

   i. If a Party wishes to present another witness, they must clearly demonstrate that the witness was not reasonably available or not reasonably known to the Parties at the time of the investigation, or that the witness is likely to have information that has significant relevance to a material fact at issue in the investigation.

   ii. The Hearing Officer may, at their discretion, choose to consider information from such witnesses and may draw a negative inference from the Party's delay in identifying the witness.

   iii. The Hearing Officer may, at their discretion, instruct that the investigation be re-opened to allow that witness to be interviewed. In such cases, the interview will generally be conducted by the Investigator and a summary of information provided by the witness will be made available to the Parties for their review and comment prior to the Hearing.

i. Before a Complainant, Respondent, or witness answers a cross-examination or other question, the Hearing Officer must first determine whether the question is relevant and explain any decision to exclude a question as not relevant. All relevant questions and follow-up questions, including those challenging the credibility of Parties and witnesses, will be allowed. Consistent with the foregoing, the Hearing Officer may also exercise their discretion to exclude any questions they deem to be harassing or unnecessarily repetitive, and will explain any decision to exclude a question on these grounds.

j. Questions and evidence about the Complainant's sexual predisposition or prior sexual behavior are not relevant, unless such questions and evidence:

   i. Are offered to prove that someone other than the Respondent committed the conduct alleged by the Complainant; or

Exhibit D, 30 of 38

ii. Concern specific incidents of the Complainant's prior sexual behavior with respect to the Respondent and are offered to prove whether Consent was present.

k. Questions and evidence about the Respondent's prior sexual history with an individual other than a Party to the proceedings may only be considered if the evidence:

   i. Proves prior sexual misconduct;

   ii. Supports a claim that a Party has an ulterior motive; or

   iii. Impeaches a Party's credibility after that Party has put their own prior sexual conduct in issue.

l. The Hearing Officer may not consider a Party's records that are made or maintained by a physician, psychiatrist, psychologist, or other recognized professional or paraprofessional acting in the professional's or paraprofessional's capacity, or assisting in that capacity, and which are made and maintained in connection with the provision of treatment to the Party, unless the University obtains that Party's voluntary, written consent to provide that information for consideration.

m. The Hearing Officer may not consider any questions or evidence about a student's history of mental health counseling, treatment, or diagnosis, unless the student consents to providing that information for consideration.

n. The Hearing Officer may not consider questions or evidence that constitute, or seek disclosure of, information protected under a legally recognized privilege, unless the person holding such privilege has waived the privilege.

o. If a Party or witness does not answer the cross-examination questions that are deemed relevant by the Hearing Officer, if any, then the Hearing Officer must not rely on any statement by that Party or witness in reaching a determination regarding responsibility.

   i. This prohibition applies to statements made by the Party or witness at the Hearing, in the investigative report, and in evidence, such as in a police report, medical report, or other record.

   ii. The Hearing Officer may continue to consider and rely on alleged verbal conduct that constitutes all or part of the underlying alleged Prohibited Conduct itself.

   iii. The Party or witness's reason for refusing to answer a relevant question does not matter.

p. A Party's or witness's failure to answer a question posed by the Hearing Officer does not trigger a prohibition against relying on that Party's or witness's other statements. However, the Hearing Officer cannot draw an inference about the determination regarding responsibility based solely on a Party's or witness's absence from the Hearing or refusal to answer cross-examination or other questions.

q. During the Hearing, the Hearing Officer may call for or grant requests for recesses as needed, and the Hearing Officer retains the discretion to balance recesses with the need to conduct the Hearing in an orderly and timely fashion. Each Party may request recesses if needed to speak privately with an Advisor or Support Person, or for other reasons. The Hearing Officer may suggest recesses if they feel it may be helpful to a Party, particularly during cross-examination.

r. Each Party will have the opportunity to make a brief closing statement.

s. The Hearing Officer may determine that multiple sessions or a pause in the continuation of the Hearing until a later date or time is needed to complete the Hearing. If so, the Hearing Officer or Title IX Officer or designee will notify all participants and will endeavor to accommodate all participants' schedules to complete the Hearing as promptly as practicable.

7. Written Notice of Determination

The Hearing Officer will provide the Parties with a *Written Notice of Determination* at the same time. The *Written Notice of Determination* will include:

Exhibit D, 31 of 38

5/11/23, 6:23 PM
University Policies | UMD | University of Maryland Policy and…
Case 1:23-cv-03507-RDB   Document 2-6   Filed 12/27/23   Page 32 of 38

a. Identification of the allegations at issue;

b. A description of the procedural steps taken throughout the case;

c. Findings of fact supporting the determination;

d. Conclusions regarding application of the Policy to the facts;

e. A statement of, and rationale for, the determination for each allegation;

f. A statement of, and rationale for, any Sanctions imposed on the Respondent, and whether any Remedies will be provided to the Complainant, as set forth in more detail below; and

g. A description of the procedures and permissible grounds for appeal.

8. Disciplinary Sanctions, Remedies, and Other Responsive Actions

The University may take responsive action based on a determination of responsibility for a violation of the Policy. Responsive action is intended to eliminate Prohibited Conduct, prevent its recurrence, and promote accountability while supporting the University's educational mission and legal obligations. Responsive action may include Sanctions, Remedies, or other responsive action including rehabilitation, educational, restorative, or monitoring components.

a. Prior to issuing the Written Notice of Determination, the following will occur:

i. Parties will have the option to provide written impact statements to the Hearing Officer within three (3) Days of completion of the Hearing.

ii. The Hearing Officer shall confer with the Title IX Officer or designee, and shall confer with other University administrators as appropriate, prior to issuing the written determination.

a. Other University administrators may include UHR/Staff Relations and department/unit heads and supervisors for staff, and the Provost's Office/Faculty Affairs and department/unit heads and supervisors for faculty.

b. In determining an appropriate sanction for staff Respondents, the Hearing Officer shall consult with UHR/Staff Relations prior to issuing the Written Notice of Determination.

c. If termination and/or removal of tenure may be an appropriate sanction for faculty Respondents, the Hearing Officer shall consult with the Provost, who shall consult with other administrators, as deemed appropriate by the Provost.

iii. Although the Hearing Officer shall confer with University officials as described above, the Hearing Officer is the decision maker responsible for issuing the *Written Notice of Determination*.

iv. The Title IX Officer or designee and other University administrators will provide input with respect to any recommended Sanction and other responsive action to the Hearing Officer.

v. The University will not publicly disclose personally identifiable information about the Parties or the written determination (including any Sanctions) except as required by law.

b. The range of Sanctions and other responsive actions that may be imposed upon the Respondent include, but are not limited to, the following:

i. For students:

Exhibit D, 32 of 38

a. Degree revocation: Rescinding a degree previously awarded by the University. A permanent notation will appear on the student's transcript.

b. Expulsion: Permanent separation of the student from the University. A permanent notation will appear on the student's transcript. The student will also be barred from University premises (grounds and buildings). Pursuant to delegated authority, the Vice President for Student Affairs shall administratively approve expulsions.

c. Suspension: Separation of the student from the University for a specified period of time. A permanent notation will appear on the student's transcript. The student shall not participate in any University-sponsored activity and may be barred from University premises (grounds and buildings) during the period of suspension. Suspended time will not count against any time limits required by the Graduate School for completion of a degree. A sanction of suspension may be withheld. Pursuant to delegated authority, the Vice President for Student Affairs shall administratively approve suspensions.

d. Disciplinary Probation: The student is prohibited from representing the University in any extracurricular activity or from running for or holding office in any student or University organization. Additional restrictions or conditions may also be imposed.

e. Disciplinary Reprimand: Warning to the student that further misconduct may result in a more severe disciplinary action.

f. Educational Sanctions: In addition to Sanctions specified above, educational Sanctions that provide the student with learning, assistive or growth opportunities, research or reflective assignments, community services, values/ethics-based activities or other learning-based sanctions.

g. Housing Sanctions which may include, but are not limited to: University Housing Termination, Denial of Re-contracting with University Housing, Administrative Room Moves, and Housing Probation. Students who are terminated from Housing or are Denied the ability to Recontract with University Housing are rendered ineligible to lease space in the Courtyards at Maryland and South Campus Commons apartment communities, as well as some University-owned Fraternity and Sorority houses.

h. No Contact Order.

i. Denial of Access to campus grounds and/or buildings.

ii. For staff:

a. Separation from employment, up to and including termination;

b. Suspension without pay;

c. Reassignment;

d. Written reprimand;

e. Education and training

f. No Contact Order; and

g. Denial of Access to campus grounds and/or buildings.

iii. For faculty:

a. Separation from employment, up to and including termination and loss of tenure;

5/11/23, 6:23 PM                    University Policies | UMD | University of Maryland Policy and...

Case 1:23-cv-03507-RDB   Document 2-6   Filed 12/27/23   Page 34 of 38

    b. Suspension without pay;

    c. Reassignment;

    d. Written reprimand;

    e. Education and training;

    f. No Contact Order; and

    g. Denial of Access to campus grounds and/or buildings.

iv. For third parties:

    a. Restrictions on participation in University programs or activities, attendance at University events, or ability to enter campus grounds and/or buildings.

c. The following factors will be considered before imposing Sanctions and other responsive actions on a Respondent:

    i. The nature and degree of violence involved in the conduct at issue.

    ii. The impact of the conduct on the Complainant.

    iii. The impact of the conduct on the community and/or the University.

    iv. Prior relevant misconduct by the Respondent.

    v. Maintenance of a safe and respectful environment conducive to working and learning.

    vi. Protection of the University community.

    vii. Any other mitigating, aggravating or compelling circumstances appropriate to reaching a just and appropriate resolution.

d. The range of Remedies that may be provided to a Complainant:

The University may provide reasonable Remedies to a Complainant based on a determination of responsibility for a violation of the Policy. The range of Remedies that may be provided to a Complainant include, but are not limited to:

    i. For students:

        a. Supportive measures: such as extended classwork deadlines, flexible deadlines on course deliverables, change of venue for taking a test or exam, change in test or exam date and/or retaking of a test or exam.

        b. Academic accommodations: such as retroactive drop from a particular class, retroactive withdrawal from a semester, policy exemption requests and/or tuition reimbursement.

        c. Additional accommodations: such as a No Contact Order, Denial of Access for the Respondent, housing accommodation, course schedule changes, counseling, referral to University resources including CARE to Stop Violence, and/or referral to outside agencies.

    ii. For staff:

        a. Supportive measures: such as reassignment to a different shift, location, supervisor or work unit.

**Exhibit D, 34 of 38**

b. Additional accommodations: such as counseling, referral to University resources including CARE to Stop Violence, and/or referral to outside agencies.

iii. For faculty:

a. Supportive measures: such as reassignment of duties, change in work location, change in service assignments, change in reporting structure.

b. Additional accommodations: such as counseling, referral to University resources including CARE to Stop Violence, and/or referral to outside agencies.

iv. For third parties:

a. Referral to outside agencies/resources.

b. Connection with another institution's Title IX Coordinator, if applicable.

e. In the event of a written determination that the Respondent violated the Policy and that Remedies provided to the Complainant are warranted, the following will occur:

i. Remedies will be provided to the Complainant on a confidential basis.

ii. The written determination issued by the Hearing Officer will not include specific Remedies provided to the Complainant but will state whether Remedies designed to restore or preserve equal access to the University's Education Program or Activity will be provided.

iii. Remedies are considered confidential and the Respondent will not have access to specific information about what Remedies will be provided except to the extent that the Remedies are punitive and burden the Respondent.

iv. Remedies may not be appealed by either Party.

v. The University will not publicly disclose personally identifiable information about the Parties, the written determination, or the Sanctions, except as required by law.

9. Appeals

a. Bases for Appeals

Either Party may initiate this appeal process when the Party receives a *Written Notice of Designation* or a *Written Notice of Determination*. Appeals must be submitted in writing to the Title IX Officer within five (5) days of receipt of the Written Notice of Designation or the Written Notice of Determination. Appeals are limited to the bases listed below.

i. Procedural Irregularity

a. In all cases, the procedural irregularity must be one that affects the ultimate outcome of the designation or the written determination.

b. A procedural irregularity affecting the designation or the written determination may include: a failure to follow the University's procedures; a failure to objectively evaluate all relevant evidence, including inculpatory or exculpatory evidence; or a determination regarding what evidence was excluded as irrelevant.

ii. New Evidence

**Exhibit D, 35 of 38**

a. New Evidence is evidence that was not reasonably available at the time the designation or written determination was made, and that is significant and relevant enough that it could affect the outcome.

b. Evidence presented prior to the time the designation or written determination is issued does not qualify as new evidence, as it was reasonably available at the time.

iii. Conflict of Interest or Bias

a. The Title IX Officer or designee, Investigator, or Hearing Officer had a conflict of interest or bias for or against Complainants or Respondents generally or the individual Complainant or Respondent that affected the designation or written determination.

b. Appeals submitted on the grounds of conflict of interest or bias should be based on the current case and process in question and will be assessed accordingly.

iv. Substantially Disproportionate Sanction as given within the *Written Notice of Determination*

a. The Sanction set forth in the written determination is substantially disproportionate to the offense, which means it is unreasonable given the facts or circumstances of the particular Policy violation.

b. Appellate Hearing Officer

Appeals will be reviewed by the designated Appellate Hearing Officer(s) for all appeals of designations or written determinations under these Procedures. The Appellate Hearing Officer(s) will be determined in accordance with the Respondent's status, as explained below. The Appellate Hearing Officer(s) shall be free from conflict of interest or bias and shall not be the same person who reached the determination regarding the designation or the written determination, the Investigator, or the Title IX Officer. All Appellate Hearing Officers will have had no previous involvement with the case that the Appellate Hearing Officer(s) are assigned to review.

i. Appeals involving a student Respondent shall be reviewed by a panel of trained Appellate Hearing Officers known as the University Senate Student Conduct Committee.

ii. Appeals involving a staff or third-party Respondent shall be reviewed by the Vice President and Chief Administrative Officer (VP&CAO) or designee. The VP&CAO or designee may appoint trained staff members available to serve as an Appellate Hearing Officer. Appeals involving staff or third-party Respondents may be assigned to one such Appellate Hearing Officer on a rotating case basis.

iii. Appeals involving a faculty Respondent shall be reviewed by the Senior Vice President and Provost (Provost) or designee. The Provost or designee may appoint trained faculty members available to serve as an Appellate Hearing Officer. Appeals involving faculty Respondents may be assigned to one such Appellate Hearing Officer on a rotating case basis.

c. Appellate Process

The appellate process following a *Written Notice of Designation* or *Written Notice of Determination* will proceed as follows:

i. Appeals will be in writing only. There will be no Hearing.

ii. Parties will have five (5) Days from receipt of a *Written Notice of Designation* or Written Notice of Determination to submit a written appeal statement challenging the decision.

iii. Parties will be notified if the other Party files a written appeal statement and given notice in writing of the general grounds for the appeal. The other Party will be given five (5) Days from receipt of the other Party's written appeal statement to submit a written appeal statement in support of the designation or written determination.

**Exhibit D, 36 of 38**

iv. The Title IX Officer or designee shall coordinate the scheduling of the Appellate Hearing Officer(s) and notify the Parties of the date of the appeal deliberation.

v. The appeal deliberation is closed to the parties.

vi. The Appellate Hearing Officer(s) will issue a written decision including its rationale, which decision shall be shared with both Parties, within ten (10) Days of the deliberations.

vii. The Appellate Hearing Officer(s) may:

a. affirm the designation or written determination;

b. overturn the designation or written determination;

c. affirm the determination of responsibility and modify the sanction if it is found to be disproportionate; or

d. remand the case to remedy procedural errors, remedy a conflict of interest or bias, or consider new evidence.

viii. The written decision by the Appellate Hearing Officer(s) is final and is not subject to further appeal.

ix. After the appeal process is concluded or when the time for filing an appeal has expired and neither Party has submitted an appeal, the Title IX Officer or designee shall notify the Parties simultaneously of the final outcome of the adjudication process.

x. The determination regarding responsibility for a violation of the Policy becomes final either on the date that the University provides the Parties with the written decision of the result of the appeal if an appeal is filed, or if an appeal is not filed, after the five (5) Day period for filing an appeal has lapsed. In cases that are remanded by the Appellate Hearing Officer(s), the determination will not become final until all remanded proceedings are completed.

10. Academic Transcripts and Effect of Withdrawal on Student Respondents

Following completion of all appeals processes, Sanctions of expulsion and suspension are permanently noted on a student Respondent's academic transcript. In the event a Respondent chooses to withdraw from the University prior to the resolution of a Formal Complaint, or where the Respondent declines to participate in the University proceedings under this Policy and Procedures, the University will continue the resolution process in accordance with these Procedures. When a Respondent withdraws before the conclusion of the resolution process, the Respondent is ineligible to return to the University until the resolution process has concluded.

11. Post-Resolution Follow-Up

After any Sanction and/or Remedies are issued, if the Complainant agrees, the Title IX Officer or designee may periodically contact the Complainant to ensure the Prohibited Conduct has ended and to determine whether additional Remedies are necessary. The Complainant may decline future contact at any time. The Title IX Officer or designee may periodically contact the Respondent to assure compliance with the intent and purpose of any Sanction and/or Remedies that have been imposed. Any violation by a Respondent of the intent and purpose of any Sanction and/or Remedies imposed under the Policy, or a failure by a University employee to provide specified Sanctions or Remedies should be reported to the OCRSM. OCRSM will take appropriate steps to address any such violation or failure, or will refer it to appropriate University offices for review under other disciplinary procedures.

The Complainant and Respondent are encouraged to provide the Title IX Officer or designee with feedback about their experience with the process and recommendations regarding ways to improve the effectiveness of the University's implementation of this Policy and Procedures.

---

[1] University employees may have additional reporting obligations under VI-1.50(A) University of Maryland Policy on the Reporting of Suspected Child Abuse and Neglect.

Exhibit D, 37 of 38

5/11/23, 6:23 PM    University Policies | UMD | University of Maryland Policy and...

Case 1:23-cv-03507-RDB   Document 2-6   Filed 12/27/23   Page 38 of 38

[2] See 34 C.F.R. § 106.30 (defining "Sexual Harassment" under Title IX).

[3] This definition encompasses the FBI uniform crime reporting system offenses required by Title IX.

[4] The statutory age of consent in Maryland is 16. See Md. Code Ann., Crim. Law §§ 3-301 to -307.

[5] This mandatory dismissal is required by 34 C.F.R. § 106.45(b)(3)(i).