**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

JOHN DOE,                                    *

        *Plaintiff*,                      *

        v.                                *        No. 1:23-cv-03507-RDB

                                          *

UNIVERSITY OF MARYLAND,                       *
COLLEGE PARK,

        *Defendant*.                      *

*        *        *        *        *        *        *        *        *        *        *        *

**MEMORANDUM IN SUPPORT OF DEFENDANT'S**
**PARTIAL MOTION TO DISMISS AND IN OPPOSITION**
**TO PLAINTIFF'S AMENDED MOTION FOR**
**PRELIMINARY INJUNCTION**

Respectfully submitted,

ANTHONY G. BROWN
Attorney General of Maryland

/s/ Ariel Lichterman
_____
ARIEL LICHTERMAN
Federal Bar No. 20850
Assistant Attorney General
Office of the Attorney General
200 St. Paul Place, 17th Floor
Baltimore, Maryland  21202
alichterman@oag.state.md.us
(410) 576-6459
(410) 576-6437 (facsimile)

February 6, 2024                             Attorneys for Defendant University of
Maryland, College Park

## TABLE OF CONTENTS

Page

INTRODUCTION .................................................................................................................. 1

STATEMENT OF FACTS ..................................................................................................... 3

LEGAL STANDARD ............................................................................................................ 3

ARGUMENT ......................................................................................................................... 4

I.   Plaintiff's Due Process Claim Fails Because it is Barred by Sovereign Immunity. ........ 4

II.  Plaintiff Fails to Plead a Plausible Due Process Claim and Fails to Establish the
     Likelihood of Success on the Merits. ................................................................................ 7

     A.   Plaintiff Does Not Have A Constitutionally-Protected Liberty or Property
          Interest ........................................................................................................................8

     B.   The University Provided Plaintiff More Than Sufficient Process. ..............................11

     C.   Mr. Doe's Purported Procedural Inadequacies Fail To Support a Due Process
          Violation. ................................................................................................................... 18

          1.   The University's Treatment of Mental Health Evidence Did Not Violate
               Due Process. ........................................................................................................ 18

          2.   The University's Treatment of Sexual History Evidence and New Evidence
               Did Not Violate Due Process. .............................................................................. 25

          3.   The Hearing Procedures Did Not Violate Due Process. ...................................... 27

          4.   There Was Sufficient Evidence and the Credibility Determination Did Not
               Violate Due Process. ........................................................................................... 28

          5.   The Investigation Did Not Violate Due Process. ................................................. 30

     CONCLUSION ................................................................................................................ 32

## TABLE OF AUTHORITIES

### Cases

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ................................................................................................... 3

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ................................................................................................... 3

*Butler v. Rector & Bd. of Visitors of Coll. of William & Mary*, 121 F. App'x 515 (4th Cir.
  2005) ................................................................................................................... 15, 21

*Dewhurst v. Century Aluminum Co.*,
  649 F.3d 287 (4th Cir. 2011) ..................................................................................... 4

*Dillow v. Virginia Polytechnic Inst. & State Univ.*,
  No. 7:22CV00280, 2023 WL 2320765 (W.D. Va. Mar. 2, 2023) ......................... 9, 27

*Dillow v. Virginia Polytechnic Inst. & State Univ.*,
  No. 7:22CV00280, 2023 WL 5925543 (W.D. Va. Sept. 12, 2023) ..................... 11, 16

*Dixon v. Alabama*,
  294 F.2d 150 (5th Cir. 1961 ............................................................................... passim

*Doe 2 by & through Doe 1 v. Fairfax Cnty. Sch. Bd.*, 384 F. Supp. 3d 598 (E.D. Va.
  2019) ....................................................................................................................... 15

*Doe v. Alger*,
  175 F. Supp. 3d 646 (W.D. Va. 2016) ..................................................................... 11

*Doe v. Baum*, 903 F.3d 575 (6th Cir. 2018) ................................................................. 15

*Doe v. Bd of Trustees of Whitman Coll.*,
  No. 4:23-CV-05051-MKD, 2023 WL 3316893 (E.D. Wash. Apr. 25, 2023) ............ 13

*Doe v. Maryland*,
  No. CV ELH-20-1227, 2021 WL 1174707 (D. Md. Mar. 29, 2021) ................... 28, 30

*Doe v. Ohio State Univ.*,
  239 F. Supp. 3d 1048 (S.D. Ohio 2017) ................................................................. 28

*Doe v. Rector & Visitors of George Mason Univ.*,
  132 F. Supp. 3d 712 (E.D. Va. 2015) ..................................................................... 10

*Doe v. The Citadel*,
   No. 22-1843, 2023 WL 3944370 (4th Cir. June 12, 2023)..........................................29

*Doe v. Univ. of Cincinnati*,
   872 F.3d 393 (6th Cir. 2017) ......................................................................................14

*Doe v. Virginia Polytechnic Inst. & State Univ.*,
   77 F.4th 231 (4th Cir. 2023) ................................................................................passim

*Doe v. Wake Forest Univ.*,
   No. 1:23-cv-001114, 2023 WL 2239475 (M.D.N.C. Feb. 27, 2023) .............. 13, 28, 29

*Edelman v. Jordan*,
   415 U.S. 651 (1974)......................................................................................................6

*Elhady v. Kable*,
   993 F.3d 208 (4th Cir. 2021) ......................................................................................12

*Equity In Athletics, Inc. v. Dep't of Educ.*,
   639 F.3d 91 (4th Cir. 2011) ..........................................................................................9

*Ex Parte Young*,
   209 U.S. 123 (1908)...................................................................................................6, 7

*Flaim v. Med. Coll. of Ohio*,
   418 F.3d 629 (6th Cir. 2005) ................................................................................14, 17

*Gorman v. Univ. of Rhode Island*,
   837 F.2d 7 (1st Cir. 1988)........................................................................................13, 27

*Goss v. Lopez*,
   419 U.S. 565 (1975)..........................................................................................9, 10, 11

*Green v. Mansour*,
   474 U.S. 64 (1985)........................................................................................................7

*Henson v. Honor Comm. of U. Va.*,
   719 F.2d 69 (4th Cir. 1983) ............................................................................13, 20, 27

*Herman v. University of South Carolina*,
   457 F.2d 902 (4th Cir. 1972) ......................................................................................15

*Hoechst Diafoil Co. v. Nan Ya Plastics Corp.*,
   174 F.3d 411 (4th Cir. 1999) ........................................................................................4

*Kashdan v. George Mason Univ.*,
  70 F.4th 694 (4th Cir. 2023) ................................................................................4

Kentucky v. Graham,
  473 U.S. 159 (1985) ..............................................................................................5

*Kimel v. Florida Bd. of Regents*,
  528 U.S. 62 (2000) ................................................................................................6

*Madsen v. Women's Health Ctr., Inc.*,
  512 U.S. 753 (1994) ..............................................................................................4

*Magnetti v. Univ. of Maryland*,
  402 Md. 548 (2007) ..............................................................................................5

*Mathews v. Eldridge*,
  424 U.S. 319, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976) ...........................................12, 30

*McBurney v. Cuccinelli, II*,
  F.3d 393 (4th Cir. 2010) .......................................................................................7

*Palotai v. University of Maryland College Park*,
  959 F. Supp. 714 (D. Md. 1997) .........................................................................5

*Paul v. Davis*, 424 U.S. 693 (1976) ......................................................................11

*Pennhurst State School & Hosp. v. Halderman*,
  465 U.S. 89 (1984) ................................................................................................6

*Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*,
  506 U.S. 139 (1993) ..............................................................................................7

*Quern v. Jordan*,
  440 U.S. 332 (1979) ..............................................................................................6, 7

*Regents of the Univ. of Mich. v. Ewing*,
  474 U.S. 214 (1985) ..............................................................................................10

*Saman v. LBDP, Inc.*,
  Civ. No. DKC 12-1083, 2012 WL 5463031 (D. Md. Nov. 7, 2012) ...........................1

*Sansotta v. Town of Nags Head*,
  724 F.3d 533 (4th Cir. 2013) ...............................................................................8

*Sheppard v. Visitors of Virginia State Univ.*,
  993 F.3d 230 (4th Cir. 2021) ...............................................................................8

iv

*Shirvinski v. U.S. Coast Guard*,
    673 F.3d 308 (4th Cir. 2012) ................................................................. 11

*Siegert v. Gilley*, 500 U.S. 226 (1991) ............................................................. 11

*Singhal & Co., Inc. v. VersaTech, Inc.*,
    Civ. No. JKB- 19-1209, 2019 WL 4120434  (D. Md. Aug. 27, 2019) ...................... 1

*Sohmer v. Kinnard*,
    535 F. Supp. 50 (D. Md. 1982) .............................................................. 14

*Stern v. Board of Regents, Univ. Sys. of Md.*,
    380 Md. 691 (2004) .............................................................................. 5

*Tigrett v. Rector & Visitors of Univ. of Va.*,
    290 F.3d 620 (4th Cir. 2002) ......................................................... 10, 30

*Tigrett v. Rector & Visitors of Univ. of Virginia*,
    97 F. Supp. 2d 752 (W.D. Va. 2000) ........................................................ 7

*United States v. Salerno*, 481 U.S. 739 (1987 .................................................. 20

*Walsh v. Hodge*,
    975 F.3d 475 (5th Cir. 2020) ................................................................ 12

*Weller v. Dep't of Soc. Servs.*,
    901 F.2d 387 (4th Cir. 1990) .................................................................. 6

*Winnick v. Manning*, 460 F.2d 545 (2d Cir. 1972) ....................................... 15, 27

*Winter v. Nat. Res. Def. Council, Inc.*,
    555 U.S. 7 (2008) ............................................................................. 4, 8

*WV Ass'n of Club Owners & Fraternal Servs., Inc. v. Musgrave*,
    553 F.3d 292 (4th Cir. 2009) ................................................................. 4

**Statutes**

Md. Code Ann., Educ. § 11-601(d)(4)(iv)(2) ................................................... 20

Md. Code Ann., Educ. § 12-101(6)(i) ............................................................. 5

Md. Code Ann., Educ. § 12-102 ................................................................... 5

Md. Code Ann., State Gov't § 12-104(a)(1) ...................................................... 6

Md. Code Ann., State Gov't § 20-1013(b) ........................................................ 6

Md. Code Ann., State Gov't § 20-903 ........................................................................... 6

## Rules

Federal Rule of Civil Procedure 12(b)(6) ...................................................................... 3

Federal Rule of Civil Procedure 65(a) .......................................................................... 4

## Regulations

34 C.F.R. § 106.45(b)(5)(i) ......................................................................................... 19

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

JOHN DOE,                                    *

         *Plaintiff*,              *

      v.                             *     No. 1:23-cv-03507-RDB

                    *

UNIVERSITY OF MARYLAND,
COLLEGE PARK,                        *

         *Defendant*.

  *     *     *     *     *     *     *     *     *     *     *     *

**MEMORANDUM IN SUPPORT OF DEFENDANT'S PARTIAL
MOTION TO DISMISS AND IN OPPOSITION TO PLAINTIFF'S
MOTION FOR PRELIMINARY INJUNCTION**

Defendant, Angela Nastase, by her undersigned attorneys, respectfully requests that the

Court grant her partial motion to dismiss plaintiff's due process claim asserted in count II of the

amended complaint and deny plaintiff's motion for a preliminary injunction.[1]

## INTRODUCTION

This case arises out of a student disciplinary proceeding in which plaintiff John Doe, a

student at the University of Maryland, College Park ("the University"), was held responsible for

committing a sexual assault.  Mr. Doe initially brought suit alleging that the University's

investigation, hearing, and ultimate decision were the result of anti-male gender bias, in violation

---

[1] Pursuant to this Court's decision in *Singhal & Co., Inc. v. VersaTech, Inc.*, Civ. No. JKB-19-1209, 2019 WL 4120434, at *6 n.2 (D. Md. Aug. 27, 2019), this motion for partial dismissal stays further proceedings, including Defendant's Answer, until the court rules on this motion. *See id.* ("[T]he Court . . . follows the majority view that a partial motion to dismiss stays the time to file a responsive pleading."); *see also Saman v. LBDP, Inc.*, Civ. No. DKC 12-1083, 2012 WL 5463031, at *4 n.1 (D. Md. Nov. 7, 2012) (staying proceedings on all counts pending the Court's ruling on a motion for partial dismissal).

of Title IX of the Education Amendments of 1972, and sought temporary injunctive relief to allow him to attend his Spring 2024 classes and complete his final degree requirements.  On January 3, 2024, the Court issued a temporary restraining order which prevented the University from enforcing Mr. Doe's sanction until a hearing on January 12, 2024, when the Court would entertain responsive briefing by the University and hear argument on whether a preliminary injunction is warranted.  On January 12, 2024, after briefing and argument, the Court held that Mr. Doe could not demonstrate the likelihood of success on the merits of his Title IX gender discrimination claim, and thus denied a preliminary injunction.  However, the Court granted Mr. Doe leave to amend his complaint to add a due process claim and seek an injunction based on this new claim.  The Court further extended the initial temporary restraining order until late February 2024, to allow Mr. Doe to begin his Spring 2024 classes while there was additional briefing by the parties and a hearing on whether a preliminary injunction should be granted based upon Mr. Doe's due process claim.

On January 16, 2024, Mr. Doe filed an amended complaint and amended motion for a preliminary injunction, alleging that Angela Nastase, in her official capacity as the University's Title IX coordinator and the Director of its Office of Civil Rights and Sexual Misconduct, and Alyssa-Rae McGinn, the University's contracted hearing officer,[2] deprived him of the opportunity "to meaningfully contest adverse evidence" during the underlying disciplinary proceedings, in violation of the due process clause of the Fourteenth Amendment.

Ms. Nastase now moves to dismiss Mr. Doe's due process claim, and requests that the extraordinary relief of a preliminary injunction be denied, because Mr. Doe has failed to plead a plausible due process claim and cannot establish that he is likely to succeed on the merits of his

---

[2] Ms. McGinn, who is represented by Megan Jenkins of Eccleston & Wolf, P.C., has been granted an extension of time until March 4, 2024, to respond to the amended complaint.  ECF Nos. 38, 39.

due process claim.  First, Mr. Doe's due process claim is barred by sovereign immunity to the extent it seeks monetary relief.  Second, Mr. Doe has failed to plead sufficient allegations to give rise to a plausible inference, let alone to demonstrate the likelihood of success in proving, that he was deprived of a constitutionally protected liberty or property interest or that the University provided him less process than he was due.  To the contrary, it is clear from the allegations in the amended complaint and the attachments to Mr. Doe's pleadings and motions for a preliminary injunction that the University provided Mr. Doe with more procedural protections than the law requires.  Accordingly, this Court should dismiss Mr. Doe's due process claim and deny his request for a preliminary injunction.

**STATEMENT OF FACTS**

The relevant facts were set forth at length in the University's response to Mr. Doe's initial motion for a temporary restraining order and preliminary injunction.  ECF No. 23, at 2-12.  As the Court is already familiar with the details of this matter, Ms. Nastase incorporates herein by reference the statement of facts from the University's prior memorandum.  Any new or additional facts pertinent to the discussion herein are included in the appropriate analysis below.

**LEGAL STANDARD**

Federal Rule of Civil Procedure 12(b)(6) mandates dismissal of a complaint that fails to allege "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  Under the plausibility standard, a complaint cannot rely solely on "legal conclusions" or "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements;" rather, it must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  In evaluating the sufficiency of a complaint, the court "construe[s] the allegations and all reasonable inferences drawn therefrom in the light most

3

favorable to the nonmoving party," but may reject "any other 'unwarranted inferences, unreasonable conclusions, or arguments.'" *Kashdan v. George Mason Univ.*, 70 F.4th 694, 700 (4th Cir. 2023) (internal citations omitted).

Under Federal Rule of Civil Procedure 65(a), a court may issue a preliminary injunction upon the requisite showing at a hearing. A preliminary injunction seeks to "preserve[s] the status quo pending a final trial on the merits," and thus will stand in effect for an "indefinite duration." *Hoechst Diafoil Co. v. Nan Ya Plastics Corp.*, 174 F.3d 411, 422 (4th Cir. 1999). As such, it is "an extraordinary remedy never awarded as of right." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). A plaintiff must make a clear showing of entitlement to such relief. *Dewhurst v. Century Aluminum Co.*, 649 F.3d 287, 290 (4th Cir. 2011).

To obtain preliminary injunctive relief, plaintiff must establish four factors: (1) that he is "likely to succeed on the merits;" (2) that he is "likely to suffer irreparable harm" absent injunctive relief; (3) "that the balance of equities tips in his favor;" and (4) that injunctive relief is in the "public interest." *Winter*, 555 U.S. at 20; *see also WV Ass'n of Club Owners & Fraternal Servs., Inc. v. Musgrave*, 553 F.3d 292, 298 (4th Cir. 2009). Injunctive relief "should be no more burdensome to the defendant than necessary," *Madsen v. Women's Health Ctr., Inc.*, 512 U.S. 753 (1994), and a court should "pay particular regard for the public consequences in employing the extraordinary remedy of injunction." *Winter*, 555 U.S. at 24.

## ARGUMENT

### I.   PLAINTIFF'S DUE PROCESS CLAIM FAILS BECAUSE IT IS BARRED BY SOVEREIGN IMMUNITY.

Mr. Doe's newly added due process claim should be dismissed because it is barred by sovereign immunity to the extent it seeks monetary relief. Mr. Doe brings this claim under 42 U.S.C. § 1983 against Angela Nastase, the Director of the University's Office of Civil Rights and

Sexual Misconduct and the Title IX Coordinator, in her official capacity.  (Amended Complaint (ECF No. 28), pp. 1, 39.)[3]  Because Mr. Doe has brought an official-capacity claim against Ms. Nastase based solely on her position with the University, this claim is no different than a claim brought against the University itself and is therefore barred by the Eleventh Amendment.

It is well-settled that "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office," and thus "is no different from a suit against the State itself." *Will v. Michigan Dep't. of State Police*, 491 U.S. 58, 71 (1989); *see also Kentucky v. Graham*, 473 U.S. 159, 165 (1985) (holding that an official capacity suit "is *not* a suit against the official personally," and is, "in all respects other than name, to be treated as a suit against the entity."). The University is a constituent institution of the University System of Maryland, which, in turn, is an instrumentality of the State.  Md. Code Ann., Educ. § 12-101(6)(i), § 12-102.  As a result, Ms. Nastase, like the University and the State of Maryland itself, is entitled to sovereign immunity unless such immunity has been waived by the Maryland General Assembly. *See Magnetti v. Univ. of Maryland*, 402 Md. 548, 557 (2007) (holding that "[i]t is well established that the University is considered to be an arm of the State Government for the purposes of the sovereign immunity doctrine"); *Stern v. Board of Regents, Univ. Sys. of Md.*, 380 Md. 691, 700 (2004) (holding that the doctrine of state sovereign immunity, which protects a State from suit by a private citizen absent its consent, is "firmly embedded in the law of Maryland");  *see also Palotai v. University of Maryland College Park*, 959 F. Supp. 714, 716 (D. Md. 1997) (finding that the

---

[3] Mr. Doe also asserts this claim against Alyssa-Rae McGinn, who was retained by the University to serve as the hearing officer during Mr. Doe's underlying disciplinary matter, in her official capacity.  Because Ms. McGinn is not a University employee, she is not represented by undersigned counsel.

University of Maryland is "an arm of the State partaking of the State's Eleventh Amendment immunity") (internal quotation and citation omitted).)

"The Eleventh Amendment embodies the principle of sovereign immunity," *Weller v. Dep't of Soc. Servs.*, 901 F.2d 387, 397 (4th Cir. 1990), and thus bars suit against a state, a state agency, and state officials sued in their official capacities. *Pennhurst State School & Hosp. v. Halderman,* 465 U.S. 89, 98 (1984). "[I]n the absence of an unequivocal waiver specifically applicable to federal-court jurisdiction," a state retains its Eleventh Amendment immunity to suit in federal court. *Edelman v. Jordan*, 415 U.S. 651, 673 (1974). Although the Maryland General Assembly has waived immunity for certain suits brought in state court, it has not waived immunity for suits brought in federal court. *See, e.g.*, Md. Code Ann., State Gov't § 12-104(a)(1) (waiving immunity for certain tort actions filed "in a court of the State"); State Gov't §§ 20-903, 20-1013(b) (waiving immunity for certain employment discrimination claims if brought "in the circuit court for the county where the alleged unlawful employment practice occurred").

Similarly, although Congress may abrogate a state's sovereign immunity pursuant to its power under § 5 of the Fourteenth Amendment, *see Kimel v. Florida Bd. of Regents*, 528 U.S. 62, 80 (2000), Congress has not abrogated states' immunity from claims brought under § 1983. *See Will*, 491 U.S. at 66. Thus, while "Section 1983 provides a federal forum to remedy many deprivations of civil liberties, [] it does not provide a federal forum for litigants who seek a remedy against a State for alleged deprivations of civil liberties." *Id.*; *see also Quern v. Jordan*, 440 U.S. 332, 338–45 (1979) (holding that § 1983 was not intended to abrogate states' sovereign immunity).

The Supreme Court carved out a "narrow exception" to Eleventh Amendment immunity in *Ex Parte Young*, 209 U.S. 123, 167 (1908), which permits a court to enjoin a state official from committing a "continuing violation of federal law." *Green v. Mansour*, 474 U.S. 64, 68 (1985).

"The *Ex Parte Young* exception is directed at 'officers of the state [who] are clothed with some duty in regard to the enforcement of the laws of the state, and who threaten and are about to commence'" a purportedly unconstitutional act against affected parties.  *McBurney v. Cuccinelli, II,* 616 F.3d 393, 399 (4th Cir. 2010) (citing *Ex Parte Young*, 209 U.S. at 155-56).  The *Ex Parte Young* exception "applies only to prospective relief, does not permit judgments against state officers declaring that they violated federal law in the past, and has no application in suits against the States and their agencies, which are barred regardless of the relief sought."  *Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 146 (1993) (citations omitted).

Mr. Doe's amended complaint makes clear that he is seeking monetary damages arising from his due process claim.  Am. Compl. ¶ 172 (pleading that "[a]s a direct and proximate result of Defendants' unlawful actions, Doe has suffered irreparable harm, injury, and damages); Am. Compl. Prayer for Relief (seeking "[a]n award of compensatory damages").  However, to fall within the *Ex Parte Young* exception, the relief sought cannot be "retrospective" like damages for past conduct, but rather, must be "prospective."  *Quern*, 440 U.S. at 337.  Accordingly, Mr. Doe's due process claim asserted against Ms. Nastase in her official capacity to recover monetary damages should be dismissed as barred by sovereign immunity. *See Tigrett v. Rector & Visitors of Univ. of Virginia*, 97 F. Supp. 2d 752, 756 (W.D. Va. 2000) (holding that "to the extent that [the plaintiff] has sued all other individual defendants in their official capacities, those suits are barred to the extent plaintiff seeks monetary relief").

## II.   PLAINTIFF FAILS TO PLEAD A PLAUSIBLE DUE PROCESS CLAIM AND FAILS TO ESTABLISH THE LIKELIHOOD OF SUCCESS ON THE MERITS.

Much like Mr. Doe's due process claim seeking monetary relief, his due process claim seeking injunctive relief against Ms. Nastase should also be dismissed because the amended complaint fails to plead a plausible due process claim.  Based upon the allegations in the amended

complaint, and Mr. Doe's submissions with his motions for a preliminary injunction, Mr. Doe received more than the required process during his disciplinary proceeding.  In addition, because Mr. Doe cannot establish that his due process claim is likely to succeed on the merits, his request for preliminary injunctive relief should be denied.[4]

To sufficiently plead a procedural due process claim, a plaintiff "must allege: (1) that he had a 'constitutionally cognizable life, liberty, or property interest'; (2) that he was deprived of that interest by 'some form of state action'; and (3) 'that the procedures employed were constitutionally inadequate.'"  *Doe v. Virginia Polytechnic Inst. & State Univ.*, 77 F.4th 231, 236 (4th Cir. 2023) *(*quoting *Sansotta v. Town of Nags Head*, 724 F.3d 533, 540 (4th Cir. 2013)); *see also Sheppard v. Visitors of Virginia State Univ.*, 993 F.3d 230, 239 (4th Cir. 2021) (holding that a Fourteenth Amendment due process claim requires a plaintiff to "identify a cognizable property or liberty interest and a deprivation without due process.").  Mr. Doe has not sufficiently pled, nor is he likely to succeed in proving, that he has a constitutionally protected liberty or property interest, or that the University's procedures were constitutionally inadequate.

### A.   Plaintiff Does Not Have A Constitutionally-Protected Liberty or Property Interest

The amended complaint fails to plead, and Mr. Doe has failed to demonstrate the likelihood of success in proving, that he has a property or liberty interest that is protected by the Fourteenth Amendment's due process clause.   Mr. Doe alleges he has a protected property interest in

---

[4] Plaintiff also fails to satisfy the other elements required to warrant a preliminary injunction, including that he is "likely to suffer irreparable harm" absent injunctive relief; (3) "that the balance of equities tips in his favor;" and (4) that injunctive relief is in the "public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). This argument was set forth fully in the University's memorandum in opposition to plaintiff's first motion for a preliminary injunction (ECF No. 23 at 28-30).  Because the Court is familiar with these arguments, they are incorporated herein by reference rather than being duplicated in this filing.

"continuing and completing his education at the University of Maryland," and a protected liberty interest in his "good name, reputation, honor and integrity, and pursuing his education (and future educational and employment opportunities)."  Am. Compl. ¶ 160.  However, his claim fails from the start because he concedes that neither the Supreme Court, nor the Fourth Circuit, has concluded that such a property or liberty interest is entitled to due process protection. *See* ECF No. 29-2 at 8.

A property interest in a benefit requires more than a person's "mere 'unilateral expectation of it' or 'abstract need or desire for it,'" nor can it "be created by the Fourteenth Amendment itself, but rather must be created or defined by an independent source."  *Equity In Athletics, Inc. v. Dep't of Educ.*, 639 F.3d 91, 109 (4th Cir. 2011).  Indeed, property interests "'are created and their dimensions are defined' by an independent source such as state statutes or rules entitling the citizen to certain benefits."  *Goss v. Lopez*, 419 U.S. 565, 572-73 (1975).  Mr. Doe fails to identify any state statute or rule that entitles him to continued enrollment in a public university. *See Dillow v. Virginia Polytechnic Inst. & State Univ.*, No. 7:22CV00280, 2023 WL 2320765, at *10 (W.D. Va. Mar. 2, 2023) (holding that "an individual does not have a *per se* liberty or property interest in continued enrollment in a college or university").

Moreover, there is no binding Supreme Court or Fourth Circuit precedent which recognizes a constitutionally protected property interest in continued enrollment in a university.  *See Sheppard v. Visitors of Virginia State Univ.*, 993 F.3d 230, 239 (4th Cir. 2021) (noting that the Fourth Circuit, like the Supreme Court, has only assumed for the sake of argument that such an interest exists in order to reach the issue of whether sufficient process was given); *see also Regents of the Univ. of Mich. v. Ewing*, 474 U.S. 214, 222 (1985); *Tigrett v. Rector & Visitors of Univ. of Va.*, 290 F.3d 620, 627 (4th Cir. 2002).  Indeed, courts have dismissed due process claims for failing to sufficiently plead the existence of a protected property interest.  *See, e.g. Doe v. Rector & Visitors*

9

*of George Mason Univ.*, 132 F. Supp. 3d 712, 721 (E.D. Va. 2015) (holding that "because the [complaint] fails to allege the existence of a qualifying property interest, it is appropriate in this case to do as other courts have done, namely to dismiss the claim as insufficiently pled"); *see also Doe v. Virginia Polytechnic Inst. & State Univ.*, 400 F. Supp. 3d 479, 500 (W.D. Va. 2019) (dismissing complaint that "failed adequately to allege a property interest.").

Because there is no statutory or precedential basis which recognizes a constitutionally protected property interest in continued enrollment in a public university, Mr. Doe instead bases his purported property interest on *Goss v. Lopez*, 419 U.S. 565 (1975), a case about enrollment in public high school. (ECF 29-2 at 8). He suggests that because the Court in *Goss* recognized a protected property interest in continued public high school education, logic should extend that interest to a university student. (ECF 29-2 at 8). Where this argument falters, however, is that, unlike in Mr. Doe's situation, the students in *Goss* "had legitimate claims of entitlement to a public education" because an Ohio law expressly provided for free public high school education. *Goss*, 419 U.S. at 573. "In other words, the plaintiff in *Goss* was able to locate a state law source of a qualifying property interest, namely a statutory claim of entitlement to continued enrollment in public school." *Doe v. Rector & Visitors of George Mason Univ.*, 132 F. Supp. 3d 712, 719-20 (E.D. Va. 2015). Mr. Doe, on the other hand, has identified no independent source apart from his "unilateral expectation" or "desire," which does not suffice to establish a protected property interest. *Equity In Athletics, Inc.*, 639 F.3d at 109; *see also Doe v. Alger*, 175 F. Supp. 3d 646, 657 (W.D. Va. 2016) (holding that without binding precedent recognizing "a property right to continued enrollment in a public college or university," and because the plaintiff does not allege "that a state statute creates his property right, [] *Goss* does not help him").

Mr. Doe's alleged liberty interest in his "good name, reputation, honor and integrity" is similarly deficient. It is well-settled that "injury to reputation, standing alone, is not enough to demonstrate deprivation of a liberty interest. *Siegert v. Gilley*, 500 U.S. 226, 239 (1991) (citing *Paul v. Davis*, 424 U.S. 693 (1976)). "Instead, a plaintiff must demonstrate that his reputational injury was accompanied by a state action that 'distinctly altered or extinguished' his legal status…." *Shirvinski v. U.S. Coast Guard*, 673 F.3d 308, 315 (4th Cir. 2012) (citing *Paul*, 424 U.S. at 711). When the reputational harm occurs out of the employment context, courts have held that "there must be a statutory right that was altered or extinguished." *Doe v. Alger*, 175 F. Supp. 3d 646, 660 (W.D. Va. 2016) (citing *Goss*, 419 U.S. at 573). Mr. Doe has failed to allege a legal right or status, i.e. a statutory right, that was altered or extinguished by the University's actions, and thus he has not sufficiently pled a constitutionally protected liberty interest. *See Alger*, 175 F. Supp. 3d at 660 (holding that student at public university did not state a claim for a protected liberty interest in his good name, reputation, honor, and integrity); *see also Dillow v. Virginia Polytechnic Inst. & State Univ.*, No. 7:22CV00280, 2023 WL 5925543, at *6 (W.D. Va. Sept. 12, 2023) (student suspended for sexual misconduct did not state claim for a protected liberty interest in his good name and reputation for his future academic and professional career).

Mr. Doe's due process claim should therefore be dismissed, and his motion for preliminary injunction should be denied, because he fails to sufficiently plead that he had a "constitutionally cognizable life, liberty, or property interest." *Doe v. Virginia Polytechnic*, 77 F.4th at 236.

**B.    The University Provided Plaintiff More Than Sufficient Process.**

Although Mr. Doe's due process claim fails because he has no protected property or liberty interest at stake, his claim also falters because there was no constitutional inadequacy in the process he was afforded. The fundamental requirements of due process are "notice and an opportunity to be heard." *Doe v. Virginia Polytechnic Inst. & State Univ.*, 77 F.4th 231, 236-37

(4th Cir. 2023).  The opportunity to be heard must be "at a meaningful time and in a meaningful manner." *Mathews v. Eldridge*, 424 U.S. 319, 333, 96 S. Ct. 893, 902, 47 L. Ed. 2d 18 (1976) (internal quotation omitted).  However, the precise "process due is flexible and depends on context," *Doe v. Virginia Polytechnic*, 77 F.4th at 236, and thus "requires analysis of the governmental and private interests that are affected." *Mathews*, 424 U.S. at 334.  Determining what process is due in light of those interests requires consideration of three factors:  (1) "the private interest that will be affected by the official action," (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards," and (3) "the Government's interest, including the ... fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Doe v. Virginia Polytechnic*, 77 F.4th at 236-37 (quoting *Elhady v. Kable*, 993 F.3d 208, 228 (4th Cir. 2021), and *Mathews*, 424 U.S. at 335).

Turning to the first of the three factors, Mr. Doe has alleged private interests in his continued education, good name and reputation, and future educational and professional opportunities.  Am. Compl. ¶ 160.  These interests are not entitled to constitutional protection, as demonstrated above.  *Cf. Walsh v. Hodge*, 975 F.3d 475, 483 (5th Cir. 2020) (holding that a finding of sexual harassment could tarnish the plaintiff's reputation and impact future employment opportunities and thus involves a significant private interest).

Nevertheless, even if Mr. Doe's private interests are presumed to exist, the University's interests, under the third factor, are equally, if not more, significant.  Courts have recognized the importance, for instance, of "preserving the University's resources to serve its primary function of education," "protecting vulnerable witnesses," "supporting victims of sexual harassment," and "providing a safe environment" for its campus community.  *Walsh*, 975 F.3d at 484.  Imposing

"even truncated trial-type procedures might well overwhelm administrative facilities … and … cost more that it would save in educational effectiveness."  *Id*.; *see also Doe v. Wake Forest Univ.*, No. 1:23-cv-001114, 2023 WL 2239475, at *4 (M.D.N.C. Feb. 27, 2023) (holding the University has an important interest in ensuring its "ability to carry out a suspension enacted after its full disciplinary process that it believes protects [the complainant] and its broader community and ensures respect for its rules"); *Doe v. Bd of Trustees of Whitman Coll.*, No. 4:23-CV-05051-MKD, 2023 WL 3316893, at *11 (E.D. Wash. Apr. 25, 2023) (discussing the strong public interest in ensuring complainants are not discouraged from coming forward).

Because of these important interests at stake, courts have held that "[i]n the academic setting particularly, the Supreme Court has recognized that the requirements of due process may be satisfied by something less than a trial-like proceeding."  *Henson v. Honor Comm. of U. Va.*, 719 F.2d 69, 74 (4th Cir. 1983).  "In fostering and insuring the requirements of due process, however, the courts have not and should not require that a fair hearing is one that necessarily must follow the traditional common law adversarial method."  *Gorman v. Univ. of Rhode Island*, 837 F.2d 7, 14 (1st Cir. 1988); *see also Dillow v. Virginia Polytechnic Inst. & State Univ.*, No. 7:22CV00280, 2023 WL 2320765, at *11 (W.D. Va. Mar. 2, 2023) ("To meet the standard of due process in the student-discipline context, '[t]he proceedings need not ... take the form of a judicial or quasi-judicial trial; so long as the student is given notice of the charges against him, notice of the time and hearing, and a full opportunity to be heard,' due process is satisfied") (internal citation omitted).  Rather, the question is whether "the individual has had an opportunity to answer, explain, and defend, and not whether the hearing mirrored a common law criminal trial."  *Gorman*, 837 F.2d at 14.  Even where a finding of responsibility for sexual assault is found to have "a substantial and lasting impact on the student," "the protection afforded to him 'need not reach the

13

same level … that would be present in a criminal prosecution.'" *Doe v. Univ. of Cincinnati*, 872 F.3d 393, 400 (6th Cir. 2017) ("Review under *Mathews* asks only whether John Doe 'had an opportunity to 'respond, explain, and defend,'' not whether a jury could constitutionally convict him using the same procedures").

Thus, to comport with due process, a student must be provided with a meaningful hearing, that is, a hearing that "provide[s] the accused with the opportunity to 'respond, explain, and defend.'" *Flaim v. Med. Coll. of Ohio*, 418 F.3d 629, 635 (6th Cir. 2005). This means that the student should "be given the opportunity to present ... his own defense against the charges and to produce either oral testimony or written affidavits of witnesses in his behalf." *Doe v. Virginia Polytechnic Inst. & State Univ.*, 77 F.4th 231, 237 (4th Cir. 2023) (citing *Dixon v. Alabama*, 294 F.2d 150 (5th Cir. 1961)). The right to respond and defend "generally include[s] the opportunity to make a statement and present evidence. It may also include the right to call exculpatory witnesses." *Flaim*, 418 F.3d at 636. Due process does not require "active representation by legal counsel," or "an appeal from a school's decision." *Flaim*, 418 F.3d at 636.

In the Fourth Circuit, courts have routinely adopted the four procedural requirements set forth in *Dixon* as necessary to satisfy the rudiments of due process in a university disciplinary proceeding. *Sohmer v. Kinnard*, 535 F. Supp. 50, 53 (D. Md. 1982); *see also Doe v. Virginia Polytechnic Inst. & State Univ.*, 77 F.4th 231, 237 (4th Cir. 2023) ("In cases involving suspension or expulsion from colleges and universities, we have drawn on the Fifth Circuit's decision in *Dixon*"). These requirements are: (1) the student must receive advance notice of the charges; (2) the student is entitled to the names and a summary of the testimony of witnesses to be presented at the hearing; (3) the student has a right to be heard in his own defense and to present evidence on his behalf; and (4) the hearing body should issue a written decision. *Id.* (citing *Dixon*, 294 F.2d

158-59, and *Herman v. University of South Carolina*, 457 F.2d 902 (4th Cir. 1972)); *cf. Butler v. Rector & Bd. of Visitors of Coll. of William & Mary*, 121 F. App'x 515, 520 (4th Cir. 2005) (holding that the "rudiments of procedural due process" only require "notice and an opportunity to be heard").

Consistent with the procedural requirements in *Dixon*, the Fourth Circuit has held that there is no due process right to cross-examination in a student disciplinary proceeding. *Butler*, 121 F. App'x at 520 (rejecting the plaintiff's assertion that he had a "right to call and cross-examine witnesses," because the court "find[s] no basis in the law, nor does [plaintiff] provide one, for importing such a requirement into the academic context"); *see also Doe 2 by & through Doe 1 v. Fairfax Cnty. Sch. Bd.*, 384 F. Supp. 3d 598, 612 (E.D. Va. 2019) ("Although the Sixth Circuit may now require cross-examination in a school disciplinary proceeding where the proceeding hinges on a question of credibility, the Fourth Circuit has not found 'a basis in the law' for 'importing' the right to cross-examination 'into the academic context'") (citing *Butler*, 121 F. App'x at 520, and *Doe v. Baum*, 903 F.3d 575, 578 (6th Cir. 2018)), aff'd, 832 F. App'x 802 (4th Cir. 2020); *see also Winnick v. Manning*, 460 F.2d 545, 549 (2d Cir. 1972) ("The right to cross-examine witnesses generally has not been considered an essential requirement of due process in school disciplinary proceedings").

In the instant case, the University satisfied all four *Dixon* requirements with respect to Mr. Doe's disciplinary proceeding, and in fact, provided Mr. Doe numerous additional procedural protections that are not required. Importantly, Mr. Doe does not dispute any of these facts, which were either explicitly alleged in the Amended Complaint, or can be gleaned from Mr. Doe's submissions with his motions for preliminary injunctive relief. With respect to the first *Dixon* requirement, Mr. Doe was provided with notice of the charges and detailed allegations against

15

him.  Am. Compl. ¶¶ 43, 48.  The notice of formal complaint advised Mr. Doe of his rights and responsibilities, and assured him that he was presumed not responsible until conclusion of the adjudicatory hearing.  ECF No. 3, at 11.  Mr. Doe has not challenged the notice he was provided.

With respect to the second requirement, that Mr. Doe was entitled to the names and a summary of the testimony of witnesses to be presented at the hearing, Mr. Doe was provided with all of this information in the detailed investigation report, and again at the pre-hearing meeting. Am. Compl. ¶¶ 50-77, 93, 95.  Notably, in addition to being provided this information, Mr. Doe was afforded, but declined, the opportunity to submit his own evidence, witness lists, respond to questions, provide a statement, and submit a response to the investigation reports.  Am. Compl. ¶¶ 76, 77, n.2; ECF No 4, at 3-4, 10, 15.  This satisfies the second *Dixon* requirement.  Nevertheless, the University provided Mr. Doe with additional procedural protections when, after the investigation closed, it granted his request to reopen the investigation to allow new evidence, and accepted Mr. Doe's submission of additional records, including the police report Ms. Roe had filed regarding the incident.  ECF No. 6, at 2.  Thus, not only was Mr. Doe provided with the due process requirement to be informed of the anticipated evidence to be presented at the hearing, he was also provided numerous opportunities to participate in determining what that evidence would be.

With respect to the third requirement, which entitled Mr. Doe to be heard in his own defense and to present evidence on his behalf, this too was satisfied.  The disciplinary proceeding lasted two days and approximately 13 hours.  Am. Compl. ¶ 96.  Mr. Doe was permitted to attend the entire live proceeding, and to testify on his own behalf and present evidence.  Am. Compl. ¶ 97.  In addition, although not a due process requirement, Mr. Doe was permitted to be represented by an attorney throughout the investigation and disciplinary proceeding, Am. Compl. ¶ 49, and his attorney was permitted to conduct extensive cross-examination of Ms. Roe, one of the

investigators, and all three fact witnesses, including about various purported inconsistencies or contradictions in the evidence or testimony, as part of his defense.  Am. Compl. ¶¶ 96, 98; see, e.g. ECF Nos. 30, 31.  These procedures afforded Mr. Doe a meaningful hearing during which he was able "to be heard in his own defense and to present evidence on his behalf," *Dixon*, 294 F.2d 158-59, to "respond, explain, and defend," *Flaim*, 418 F.3d at 635, and to produce testimony and evidence on his behalf.  *Doe v. Virginia Polytechnic Inst.*, 77 F.4th at 237.

The fourth *Dixon* requirement was also met here, as the hearing officer issued a detailed written determination which set forth the basis for finding Mr. Doe responsible for violating the sexual misconduct policy.  Am. Compl. ¶¶ 107-08.  Notably, this written determination also addressed the purported inconsistencies or contradictions raised by Mr. Doe's attorney during the proceeding and explained the basis for the hearing officer's credibility determination.  Am. Compl. ¶ 108.  Thus, there is no dispute that all four Dixon requirements were clearly met here.

Nevertheless, the University again went beyond the rudiments of due process and permitted Mr. Doe to appeal the decision, which he did, raising numerous arguments on his behalf.  Am. Compl. ¶ 109.  Mr. Doe's appeal was reviewed by a three-member appellate board consisting of one University staff member and two faculty members, who met multiple times to review the evidence and deliberate and ultimately issued a written determination upholding Mr. Doe's finding of responsibility, but reducing his sanction.  Am. Compl. ¶¶ 111-114.  Mr. Doe's dissatisfaction with the outcome of this proceeding is not enough to plead, or demonstrate the likelihood of success in proving, that he was deprived of due process in the face of the undisputed allegations and evidence showing that the University afforded him more than was required under the law.

17

### C.   Mr. Doe's Purported Procedural Inadequacies Fail To Support a Due Process Violation.

Although the University provided Mr. Doe more than the rudimentary procedural requirements for his disciplinary proceeding, as demonstrated above, the purported procedural flaws raised by Mr. Doe, which fail to give rise to a plausible inference of a due process violation, are addressed in turn.  Mr. Doe's challenges to the process he was afforded fall into five general categories.  First, he claims the University's treatment of mental health evidence was an unconstitutional procedural flaw. ECF No. 29-2 at 12.[5]  Second, he claims that Ms. McGinn unevenly applied the procedures regarding sexual history evidence and presentation of new evidence. ECF No. 29-2, at 12.  Third, he challenges the procedures of the disciplinary proceeding. ECF Nos. 2-1, 25, and 29-2 at 12.  Fourth, he challenges the sufficiency and reliability of the evidence and Ms. McGinn's credibility determination.  ECF Nos. 2-1, 25, and 29-2 at 12.  Finally, he challenges the investigators' purported failure to interview potential witnesses and gather certain evidence. ECF Nos. 2-1, 25, and 29-2 at 12.  These challenges fall short of pleading a due process violation that is plausible on its face.  Necessarily, they also fail to demonstrate that Mr. Doe is likely to succeed on the merits of his due process claim.  As such, Mr. Doe's due process claim should be dismissed, and his motion for a preliminary injunction should be denied.

### 1.  The University's Treatment of Mental Health Evidence Did Not Violate Due Process.

Mr. Doe bases his due process claim on both a facial challenge and an as-applied challenge to the University's procedures regarding mental health evidence during a disciplinary proceeding.

---

[5] This is the only due process challenge Mr. Doe addresses in the instant motion for a preliminary injunction.  ECF No. 29-2, at 12.  Mr. Doe raised his other challenges as part of his initial motion for a preliminary injunction on his Title IX claim, but has incorporated those arguments by reference into the current motion.  Accordingly, the University addresses those arguments here as well.

ECF No. 29-2, at 2, 7.  Mr. Doe's facial challenge alleges that two provisions in the University's sexual misconduct procedures regarding mental health evidence during a disciplinary proceeding violate his due process rights on their face.  This argument fails because the two challenged provisions are requirements of federal and state law, respectively, and there is no due process right to this type of evidence.

The first challenged provision, under § VI.D.6.l of the Procedures, states:

> The Hearing Officer may not consider a Party's records that are made or maintained by a physician, psychiatrist, psychologist, or other recognized professional or paraprofessional acting in the professional's or paraprofessional's capacity, or assisting in that capacity, and which are made and maintained in connection with the provision of treatment to the Party, unless the University obtains that Party's voluntary, written consent to provide that information for consideration.

Procedures § VI.D.6.l, ECF No. 2-6, at 31.  This provision complies with a federal requirement promulgated as part of the 2020 Title IX Regulations, which prohibits a university from accessing, considering, disclosing or otherwise using "a party's records that are made or maintained by a physician, psychiatrist, psychologist, or other recognized professional or paraprofessional acting in the professional's or paraprofessional's capacity, or assisting in that capacity, and which are made and maintained in connection with the provision of treatment to the party" without the party's "voluntary, written consent to do so" for the proceeding at issue.  34 C.F.R. § 106.45(b)(5)(i).  The language in the University's procedures is nearly identical to that contained in the federal regulation and, crucially, Mr. Doe does not challenge the constitutionality of the federal regulation.  Indeed, a facial challenge to a legislative act imposes a "heavy burden" on a plaintiff, and is "the most difficult challenge to mount successfully, since the challenger must establish that no set of circumstances exists under which the Act would be valid." *United States v. Salerno*, 481 U.S. 739, 745 (1987).  Even if the legislative act "might operate unconstitutionally under some conceivable set of circumstances," that "is insufficient to render it wholly invalid."  *Id*.  Mr. Doe does not

19

suggest that the University's policies and procedures need not comport with federal law, which prohibits consideration of a party's mental health records without written consent in a disciplinary proceeding like Mr. Doe's. As a result, however, the University's policy, which is based upon a valid federal regulation, is itself lawful on its face.

The second provision Mr. Doe challenges, under § VI.D.6.m, states that a "hearing officer may not consider any questions or evidence about a student's history of mental health counseling, treatment, or diagnosis, unless the student consents to providing that information for consideration." Procedures § VI.D.6.m, ECF No. 2-6, at 31. This provision complies with Maryland law, which explicitly requires a university's sexual misconduct policy to prohibit an official adjudicating an alleged policy violation from considering a "student's history of mental health counseling, treatment, or diagnosis, unless the student consents." Md. Code Ann., Educ. § 11-601(d)(4)(iv)(2). Much like the provision based on federal law, this policy provision is nearly identical to the statutory provision, which Mr. Doe does not challenge. Because the University is constrained to comport its policies with state law, just as with federal law, and Mr. Doe has not challenged this statutory provision, this policy provision is valid on its face.

Moreover, as demonstrated above, the University satisfies its due process requirements with a proceeding that is "less than a trial-like proceeding," *Henson*, 719 F.2d at 74, and merely affords the student an "opportunity to present ... his own defense against the charges and to produce either oral testimony or written affidavits of witnesses in his behalf." *Doe v. Virginia Polytechnic Inst.*, 77 F.4th at 237 (citing *Dixon*, 294 F.2d at 159). Contrary to Mr. Doe's assertion that he was entitled to cross-examine Ms. Roe about her mental health diagnoses and treatment, and "test [her] assertions," (ECF No. 29-2, at 11), the trial-like rigors of cross-examination and impeachment evidence are not due process requirements in a university disciplinary proceeding in the Fourth

Circuit. *Doe v. Virginia Polytechnic Inst.*, 77 F.4th at 239 (rejecting argument that denying plaintiff an opportunity to cross-examine a complainant and impeach her credibility was a due process violation); *see also Butler*, 121 F. App'x at 520.  Accordingly, Mr. Doe's facial challenge to the University's treatment of mental health evidence fails as a matter of law.

Equally insufficient is Mr. Doe's challenge to Ms. McGinn's application of the University's procedures regarding mental health evidence.  This as-applied challenge to Ms. McGinn's treatment of mental health evidence under the University's policy is based upon three faulty assertions.  First, Mr. Doe incorrectly claims that Ms. McGinn allowed Ms. Roe "to discuss mental evidence to bolster her credibility" by referring to "her 'therapy' to explain her delayed reporting, and then by discussing the detrimental effects of the alleged sexual assault on her mental health," but would not allow Mr. Doe to "test these assertions."  ECF No. 29-2, at 11.  However, this reference to therapy was not used to bolster Ms. Roe's testimony but was made in response to questioning by Mr. Doe's attorney.  Exhibit A attached hereto, Excerpts of Transcript of Hearing, at 4 (164-165); ECF No. 4, at 7.  Moreover, although Mr. Doe suggests that he was not permitted to question Ms. Roe about the reasons for her delayed reporting, Ms. Roe was in fact questioned at length about her delay in reporting, and McGinn specifically summarized and considered this testimony in her written decision.  *See* ECF No. 6, at 9-11; Am. Compl. ¶¶ 71, 72, 75, 98(i).

Glaringly, despite Mr. Doe's claim that he could not "test" Ms. Roe's assertions, Mr. Doe's attorney was permitted significant latitude to cross-examine Ms. Roe about her history of trauma and mental health challenges, including her experience with obsessive thoughts, obsessive compulsive disorder ("OCD"), and other credibility issues.  ECF No. 30, at 3-5.  For instance, during his cross-examination of Ms. Roe, Mr. Seidel was permitted to ask the following questions about her mental health:

[Mr. Seidel]:   You referenced how sometimes, because of your background at the school, coupled with some physical situation that you're dealing with, that you would have something called excessive thoughts. Those were your words.

[Ms. Roe]:      Yeah. OCD.

[Mr. Seidel]:   During the course of this—the allegation and from the beginning of the allegation to the investigation to the police involvement, did you ever have any of those thoughts that you mentioned in that article?

[Ms. Roe]:      The same—I had the same type of thoughts, but after—after this trauma of the sexual assault, that's where I was diagnosed with Tourette.  And the OCD worsened tremendously.  And it's just something I have – I struggle with, the OCD, just obsessive thoughts and not being able to get certain thoughts out of my head.

[Mr. Seidel]:   Uh-huh

[Ms. Roe]:      And it's very distressing.  It's—it's a lot—it's very uncomfortable.

[Mr. Seidel]:   Sure. And I understand that. And I think Tamara asked you, when she was asking you some questions about what you're looking for, do you agree that one of the things that you're looking for is a solution to the physical reactions you're having because of this case?

[Ms. Roe]:      I mean, sure.  I'm not too comfortable sharing what I do like to get help for that, but –

ECF No. 30, at 4-5.  As shown by this one short example, Mr. Doe was in fact permitted to inquire about Ms. Roe's mental health and to "test her assertions."  Importantly, Ms. Roe also made clear that she did not consent to discussion of her treatment.  Just like this colloquy, much of Ms. Roe's testimony regarding her mental health was not offered to bolster her claims about the sexual assault, or to use as a "sword to prove her accusation," but was in fact elicited by Mr. Doe's attorney during cross-examination.  *See, e.g.* ECF No. 30, at 3-5.

The second faulty assertion that underlies Mr. Doe's as-applied challenge to Ms. McGinn's treatment of mental health evidence is that Ms. McGinn allegedly would not allow Mr. Doe to mention Ms. Roe's mental health even when she asked him to speculate about Ms. Roe's possible motives to lie.  ECF No. 29-2, at 11.  Mr. Doe misconstrues Ms. McGinn's instructions.  In

response to Ms. McGinn's question about whether he was aware of any reason Ms. Roe may have

had to harm him, Mr. Doe suggested that because of her "OCD," she might be "obsessing over the

idea that it happened," and that it was "possible that this is not something that she did intentionally

to harm me, but rather something she convinced herself of."  ECF No. 30, at 6.  Ms. McGinn

acknowledged that the testimony he gave "is relevant to some degree," but cautioned Mr. Doe

from commenting on anyone's mental health.  ECF No. 30, at 6.  After Mr. Doe's attorney objected

to that instruction, Ms. McGinn then further explained:

> I understand. And that's why I didn't interrupt to—to add that.  You know, it's
> not—it's not—I mean, this is all part of the record, right? It's not not[6] part of the
> record at this point.  We don't strike things from the record in this process or
> anything like that.  It was—I said that out of guidance to [Mr. Doe] to just be careful
> around approaching that topic.  I understand why he said it.  I think—like I said, I
> think it is relevant to answering my question.  It's not excluded in any way.
> Sometimes it can be hard to navigate some of those specific policy restrictions.
>
> So I—I hope that that serves more as guidance what I said than as—I didn't mean
> to indicate I was excluding that as evidence.

ECF No. 30, at 7-8.  Contrary to Mr. Doe's assertion, Ms. McGinn did not in fact prohibit Mr. Doe

from answering her question about Ms. Roe's motives to harm him.  In fact, Ms. McGinn made

clear that Mr. Doe's entire answer, including his comments about Ms. Roe's OCD and obsessive

thoughts, were part of the record and would be considered.  As Ms. McGinn clearly articulated,

she did not strike Mr. Doe's answer or restrict his ability to respond, but simply intended to guide

him in appropriately navigating the applicable procedures and laws.  This fails to demonstrate that

Ms. McGinn misapplied the procedure regarding mental health.

---

[6] The transcript extract submitted by Mr. Doe, ECF No. 30, at 7, erroneously left out the
second "not" that Ms. McGinn articulated in this sentence, as can be heard on the video recording
of the hearing (Day 1, part 2 at 1:10:06).

The third flawed assertion that underlies Mr. Doe's as-applied challenge to Ms. McGinn's treatment of mental health evidence is the claim that when Mr. Seidel was asking Ms. Roe to consent to discuss her mental health, Ms. McGinn "placed her finger on the scale" by referring to an "unwritten policy requiring written consent and making a 'really strong note' that she would not draw a negative inference from Roe's refusal to consent." ECF No. 29-2, at 11. The "unwritten policy" to which Mr. Doe refers is, in actuality, the written procedure discussed above prohibiting consideration of mental health records without written consent. Procedures § VI.D.6.l, ECF No. 2-6, at 31. But even if Ms. McGinn was referring to the procedure prohibiting questions or evidence about mental health without consent that need not be in writing, Procedures § VI.D.6.m, ECF No. 2-6, at 31, this claim falters on the fact that Ms. McGinn permitted Mr. Seidel to proceed with his questions and ask for Ms. Roe's consent. ECF No. 31, at 3. Indeed, after Mr. Seidel referred Ms. McGinn to the applicable policy provision, Ms. McGinn reviewed the policy and stated to Ms. Roe: "you can freely consent if you want." ECF No. 31, at 3.

Although Mr. Doe suggests it was inappropriate to inform Ms. Roe that no negative inference would be drawn if she withheld consent, it is notable that this occurred at the end of the thirteen-hour hearing, after Ms. Roe had already stated she would not discuss her mental health treatment, ECF No. 30, at 4-5, and Ms. McGinn had cautioned the parties about discussing mental health. ECF No. 30, at 7-8. Moreover, because the procedures on mental health were based upon, and were in compliance with, federal and state law, as demonstrated above, it cannot be considered a due process violation simply to inform the parties of what the law provides, in this case, that there are no negative consequences to withholding consent to discuss mental health treatment.

2.     **The University's Treatment of Sexual History Evidence Did Not Violate Due Process.**

Mr. Doe additionally bases his due process claim on the University's treatment of sexual history evidence and Ms. McGinn's treatment of new evidence.  ECF No. 25, at 6-7.  He claims that Ms. McGinn inappropriately restricted his testimony that Ms. Roe had told a friend of his that the friend "was better in bed than [he] was."  ECF No. 25, at 7.  Mr. Doe claims this testimony was permitted under Procedures § VI.D.6.j, ECF No. 2-6, at 30-31, because it involved "prior sexual behavior" with him and was offered to "prove whether consent was present."  *Id.*  This statement was not, in fact, offered to prove whether there was consent, but rather was in response to a question about whether Mr. Doe had any conversations about Ms. Roe after the incident.  Ex. A, at 5 (222:1-21).  Where this argument truly fails, however, is that Ms. McGinn did not preclude Mr. Doe's testimony.  Ex. A, at 5 (222:1-21).  Instead, she clarified that, in accordance with the policy, they should avoid discussion of Ms. Roe's relationship with Mr. Doe's friend, but permitted discussion of the communication from Mr. Doe's friend regarding Ms. Roe's relationship with Mr. Doe.  Ex. A, at 5 (222:1-21).

Mr. Doe incorrectly argues that Ms. McGinn then permitted discussion of his own prior sexual history, in violation of Procedures § VI.D.6.k, ECF No. 2-6, at 31, which prohibits evidence of a respondent's prior sexual history unless it proves prior sexual misconduct, supports an ulterior motive, or impeaches credibility.  ECF No. 25, at 7.  The discussion Mr. Doe complains of is when Witness-1, a fraternity brother of Mr. Doe, stated that Mr. Doe is "impulsive," and cited as an example that he once observed Mr. Doe, who was with a girl in his room and "just like walked out like butt naked, just be weird, like impulsive things."  Ex. A, at 7, 276:25-277:9.  Fatal to this argument, however, is that this is not conduct about Mr. Doe's prior sexual history.  Nevertheless, Ms. McGinn sought to ensure the appropriateness of the statement by asking a follow-up question

about what relevance Witness-1 believed that had on the incident in this case. Ex. A, at 7, 277:10-23.  As a result, the statement was appropriately permitted.

Mr. Doe also incorrectly argues that Ms. McGinn's application of the procedures regarding new evidence denied him due process.  He bases this on his claim that "new evidence" came to light in the hearing, when there was testimony that witnesses had additional text messages and photographs from before and after the incident.  ECF No. 25, at 6-7.  Under § VI.D.6.g, ECF No. 2-6, at 30, evidence not provided during the investigation is typically excluded unless it is shown that such evidence "has significant relevance to a material fact at issue in the investigation."  Fatal to Mr. Doe's argument, however, is that this purported "new evidence" did not meet the exceptions for consideration of new evidence.  Indeed, Ms. McGinn permitted some questioning about these text messages and photographs to determine whether they had "significant relevance to a material fact at issue," and were therefore essential to her determination.  However, based upon

Mr. Doe's argument finds no support in *Doe v. Alger*, 228 F. Supp. 3d 713 (W.D. Va. 2016), upon which he relies.  In Alger, the plaintiff brought a due process challenge to the student disciplinary proceeding that found him responsible for sexual misconduct.  *Id*.  A primary dispute in the case was whether the complainant was too intoxicated to provide consent for the sexual conduct.  *Id*. at 731-32.  The court found that the plaintiff was denied due process because two pieces of evidence germane to the dispute of the complainant's level of intoxication were not provided until the appellate process, depriving him of the opportunity to "raise and emphasize" the credibility questions presented by this evidence.  *Id*. at 732.

Unlike in *Alger*, the purported new evidence here did not have significant relevance to a material factual issue.  Moreover, the evidence was discussed during the hearing, and the witnesses were subject to cross-examination on this evidence.  Mr. Doe was given the "fair process" that the

court in *Alger* held was denied, that is, one that allows a plaintiff to "raise and emphasize" inconsistencies and credibility issues. *Alger*, 228 F. Supp. 3d at 732. Accordingly, the University's treatment of sexual history evidence and new evidence did not violate due process.

### 3.    The Hearing Procedures Did Not Violate Due Process.

Mr. Doe's argument that there were procedural flaws in the hearing itself is equally unavailing. Plaintiff claims that Ms. McGinn deviated from policy by questioning the parties herself and asking leading questions. ECF No. 2-1, at 6-7. Contrary to this assertion, however, due process requires far less than a "trial-like proceeding," *Henson*, 719 F.2d at 74, and need not "follow the traditional common law adversarial method," *Gorman*, 837 F.2d at 14, or "take the form of a judicial or quasi-judicial trial." *Dillow*, 2023 WL 2320765, at *11.

Moreover, Ms. McGinn did not in fact deviate from University policy when she conducted direct examination or employed leading questions. Under § VI.D.3 of the Procedures, "the hearing officer has "discretion to determine the structure of the Hearing and how questioning is conducted." ECF No. 2-6, at 28. The structure of the hearing is not bound by the formal procedural rules of a civil or criminal trial. Procedures § VI.D.6.a, ECF No. 2-6, at 30. Thus, it is not improper for a hearing officer to conduct questioning or ask leading questions. In fact, at least one provision explicitly contemplates the hearing officer asking questions when it states what the impact is when a party or witness "fails to answer a question posed by the Hearing Officer." Procedures § VI.D.6.p, ECF No. 2-6, at 31.

Nevertheless, even if Mr. Doe could show that some University procedure was not followed, it would still be insufficient to give rise to a due process violation. *See Winnick v. Manning*, 460 F.2d 545, 550 (2d Cir. 1972) ("[W]e are not inclined to hold that every deviation from a university's regulations constitutes a deprivation of due process. Here the alleged deviations did not rise to constitutional proportions and did not constitute in themselves a denial of due

process"); *see also Doe v. Ohio State Univ.*, 239 F. Supp. 3d 1048, 1082 (S.D. Ohio 2017) (holding that a university's failure "to follow its own procedural guidelines" did not rise to the level of a due process violation"). Because Ms. McGinn questioned all parties and witnesses in the same manner, Mr. Doe has not shown that the structure of the hearing impacted the outcome of the proceeding and rose to the constitutional level, especially in light of the numerous other procedural protections Mr. Doe was afforded, including representation by an attorney and the ability to conduct cross-examination. Accordingly, the hearing procedures did not violate due process.

### 4. There Was Sufficient Evidence and the Credibility Determination Did Not Violate Due Process.

Mr. Doe's attempt to plead a due process violation by arguing that there was insufficient evidence to hold him responsible finds no support in applicable authority. Notably, "[i]t is not the province of this Court 'to retry' plaintiff's disciplinary proceeding." *Doe v. Maryland*, No. CV ELH-20-1227, 2021 WL 1174707, at *23 (D. Md. Mar. 29, 2021). The "Court does not sit as a super-school disciplinary appeal board," and thus its task is not to decide if the university's "disciplinary decision in favor of Jane rather than John was 'correct,' but rather much more specifically to decide if the University violated any Federal law in its discipline of the Plaintiff." *Doe v. Wake Forest Univ.*, No. 1:23-cv-001114, 2023 WL 2239475, at *4 (M.D.N.C. Feb. 27, 2023). In other words, whether the evidence could support an alternative conclusion is irrelevant to the question of whether constitutional process was provided to the plaintiff. *See Doe v. Maryland*, 2021 WL 1174707, at *25 ("The panel members are not lawyers, however. That another panel might have reached a different conclusion is of no moment.").

Mr. Doe attempts to cast doubt on his disciplinary proceeding by raising a series of "omissions, inconsistencies, and discrepancies in Roe's version of events." Am. Compl. ¶ 109; ECF No. 2-1, at 5-6. However, because the Court does not sit as a "super-school disciplinary

28

appeal board," the focus is not on the sufficiency of the evidence but on the process provided. *Doe v. Wake Forest*, 2023 WL 2239475, at *4. For instance, in *Doe v. The Citadel*, No. 22-1843, 2023 WL 3944370 (4th Cir. June 12, 2023), the plaintiff, who brought a due process challenge to his student disciplinary proceeding which found him responsible for sexual misconduct, claimed the decision was "arbitrary and capricious because the hearing board "improperly afforded Roe's evidence more weight than his own," including numerous inconsistencies and contradictions in Roe's evidence. *Id*. at *1, 3. The Fourth Circuit held that "[t]hese assertions challenge the Board's ultimate decision on the merits, not its procedure," and thus upheld the dismissal of the plaintiff's procedural due process claim. *Id*. at 3.

Here, the following facts regarding the process Mr. Doe was afforded are not in dispute: Mr. Doe was given sufficient notice of the charges and proceeding; he was given the opportunity to participate in the investigation; he was given the opportunity to submit witness lists and evidence; he participated in a two-day, 13-hour hearing in which he testified and was present for the testimony of Ms. Roe and all witnesses; he was represented by an attorney during the investigation and hearing; his attorney conducted extensive cross-examination of all parties; he received a written determination which set forth the detailed basis for the decision finding him responsible; he was given the opportunity to appeal the determination and did so; and the appellate board issued a written decision in which the finding of responsibility was upheld, but the sanction was reduced. This robust system of procedural protections withstands Mr. Doe's constitutional challenges.

The case of *Tigrett v. Rector & Visitors of Univ. of Virginia*, 290 F.3d 620, 630 (4th Cir. 2002), is instructive. In *Tigrett*, two university students were suspended as a result of a disciplinary proceeding and brought suit claiming the proceeding violated their due process rights. *Id*. at 620,

626.  The students were provided with a "thirteen-hour trial," which included "examination of witnesses and a thorough presentation of evidence."  *Id*. at 626.  The students "were present throughout, and were afforded a full opportunity to participate and to testify," and their "positions were made clear."  *Id*.  The Fourth Circuit concluded that this amount of process "afforded [the students] the meaningful hearing to which they were entitled under *Matthews v. Eldridge*, and their contention to the contrary must be rejected."  *Id*.

The case of *Doe v. Maryland*, 2021 WL 1174707, is similarly instructive.  There, a student challenged a disciplinary decision finding her responsible for violating the sexual misconduct policy.  *Id*.  Much like the case at bar, there was a fundamental dispute as to whether there was consent for the conduct at issue.  *Id*. at *25.  Although the student brought a Title IX claim, the court analyzed the requirements of due process as well.  *Id*.  The student was given numerous procedural safeguards, including "the opportunity to provide a statement as well as testimony at the hearing," "[s]he was permitted to call witnesses," she was "accompanied by her attorney" through the proceedings.  *Id*.  In addition, "the hearing panel reviewed the evidence, deliberated for several hours following the hearing, and used a preponderance of evidence standard," and "carefully set forth the rationale for its decision," including pointing to "the evidence on which it relied to make its determination."  *Id*.  As a result, the court rejected the student's attacks on the insufficiency of this process.  Mr. Doe's challenges to the sufficiency of the evidence, like in *Tigrett* and *Doe v. Maryland*, should be rejected given the extensive process Mr. Doe was afforded.

### 5.    The Investigation Did Not Violate Due Process.

Similarly deficient is Mr. Doe's argument that there were procedural flaws in the investigation.  He claims the investigators failed to interview relevant witnesses including members of Mr. Doe's fraternity and an "outcry" witness whom Ms. Roe allegedly told about the incident, ECF No. 2, at 9-10, and failed to gather purportedly relevant text messages and

30

photographs from the night of the incident or the following day.  ECF No. 25, at 3-5.  He argues this was a procedural violation because the procedures state that investigators should "objectively evaluat[e] all inculpatory and exculpatory evidence."  Procedures, § VI.C.4, ECF No. 2-6, at 25.

However, the failure to interview witnesses during an investigation does not violate due process.  *Doe v. Virginia Polytechnic Inst.*, 77 F.4th at 238–39.  This is especially true where, like here, a determination is not made until after a hearing, in which the accused student is given the opportunity to present witnesses and a defense.  *Id.*  Indeed, the Fourth Circuit has "never held that a university has an obligation to present exculpatory evidence on behalf of an accused student." *Id.*  A glaring detail that Mr. Doe appears to overlook is that he was given the opportunity to request witnesses or other evidence to be part of the investigation, and to otherwise participate in the investigation, but he declined this opportunity.  ECF No. 4, at 4, 15; Am. Compl. ¶ 76.  The University's procedures allow a student who believes certain witnesses or evidence are crucial to their defense to ensure those witnesses or evidence are included in the investigation and hearing. Mr. Doe's choice not to avail himself of this process does not suggest that the process was lacking.

Moreover, while it is true that investigators should view all evidence objectively, investigators are tasked with gathering evidence "sufficient to reach a determination regarding responsibility."  Procedures § VI.C.5, ECF No. 2-6, at 25.  The investigators met this requirement. They interviewed Ms. Roe, as well as the first three people Ms. Roe reported the sexual assault to, i.e. Witness-1, Witness-2, and Witness-3, two of whom were present at the fraternity event preceding the incident and who had relevant information about the events leading up to the incident and shortly thereafter.  ECF No. 4, at 3-4; Am. Compl. ¶ 50.  They gathered additional evidence including photographs from the night of the incident and contemporaneous text messages.  ECF No. 3.  Mr. Doe was given the opportunity to request witnesses or other evidence to be part of the

31

investigation, to give a statement of what occurred, and to otherwise participate in the investigation, but Mr. Doe declined this opportunity.  ECF No. 4, at 4, 15; Am. Compl. ¶ 76.  This was more than sufficient to meet any due process requirements for the investigation.  However, Mr. Doe was afforded yet another layer of procedural protection, because he raised these precise issues when he appealed the decision to the appellate board, ECF No. 7, at 5.  Any claim that the investigation violated due process should therefore be rejected.

## CONCLUSION

The University's motion to dismiss Mr. Doe's due process claim should be granted, and Mr. Doe's motion for a preliminary injunction should be denied.

Respectfully submitted,

ANTHONY G. BROWN
Attorney General of Maryland

/s/ Ariel Lichterman

_____
ARIEL LICHTERMAN
Federal Bar No. 20850
Assistant Attorney General
Office of the Attorney General
200 St. Paul Place, 17th Floor
Baltimore, Maryland 21202
alichterman@oag.state.md.us
(410) 576-6459
(410) 576-6437 (facsimile)

February 6, 2024

Attorneys for Defendant University of Maryland, College Park

## CERTIFICATE OF SERVICE

I certify that, on this 6th day of February, 2024, the foregoing memorandum in opposition to motion for preliminary injunction was served by CM/ECF on all registered CMF users on the following:

William Nelson Sinclair, Esq.
Patrick Seidel, Esq.
Todd W. Hesel, Esq.
Silverman Thompson Slutkin White
400 East Pratt Street, Suite 900
Baltimore, Maryland 21202
bsinclair@mdattorney.com
pseidel@silvermanthompson.com
thesel@silvermanthompson.com

/s/ Ariel Lichterman

_____
Ariel Lichterman

33