UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| **JOHN DOE,**<br><br>    Plaintiff<br><br>v.<br><br>**UNIVERSITY OF MARYLAND,<br>COLLEGE PARK, ET AL.,**<br><br>    Defendants | **Case No. 1:23-cv-03507-RDB** |

### MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT ALYSSA-RAE MCGINN'S MOTION TO DISMISS COUNT II OF PLAINTIFF'S AMENDED COMPLAINT

Defendant, Alyssa Rae-McGinn (hereinafter "McGinn"), by and through her counsel, hereby submits this Memorandum of Law in Support of its Motion to Dismiss. McGinn states as follows:

### INTRODUCTION

This litigation arises from a Title IX investigation of a sexual assault complaint made against Plaintiff at the University of Maryland, College Park (hereinafter "UMCP"). McGinn served as the hearing officer on that complaint following UMCP's initial investigation. Plaintiff initially filed a Complaint against only UMCP, alleging that its investigation and ruling on the complaint were gender-biased in violation of Title IX of the Education Amendments of 1972. In his Amended Complaint Plaintiff alleges that McGinn deprived him of his liberty and property interests without due process in violation of the Fourteenth Amendment in conducting the hearing on the Title IX complaint filed against Plaintiff. As demonstrated herein, Plaintiff's claim is without merit and fails to set forth a valid claim for relief and, thus, should be dismissed with prejudice.

## STATEMENT OF FACTS[1]

On or about February 22, 2023, a female, who is identified in the Amended Complaint as "Jane Roe", submitted a formal complaint to UMCP's Office of Civil Rights and Sexual Misconduct ("OCRSM") against Plaintiff for sexual assault. Am. Compl. at ¶43. The complaint filed with OCRSM alleged a sexual assault by Plaintiff following a consensual sexual encounter between Plaintiff and Roe after a fraternity party on February 19, 2022. Am. Compl. at ¶¶21-30, 41 and 43. On March 3, 2023, OCRSM served Plaintiff with formal notice of the complaint. Am. Compl. at ¶48. Thereafter, OCRSM conducted its investigation of the complaint, during which Plaintiff was permitted to have a support person and advisor. Am. Compl. at ¶¶48-49. Plaintiff independently selected and retained an attorney to represent him in the capacity of advisor throughout the entire investigation and hearing process. Am. Compl. at ¶¶48-49. The investigators from OCRSM interviewed Roe and three witnesses regarding the allegations in Roe's complaint, the events of February 19, 2022 and their subsequent communications regarding the incident. Am. Compl. at ¶¶50-75.

The investigators met with Plaintiff as part of their investigation of Roe's complaint. On the advice of his attorney, Plaintiff chose not to speak with the investigators or provide any information or statement regarding the incident beyond a general denial of the allegations in Roe's complaint. Am. Compl. at ¶76. Plaintiff did not identify any witnesses for the investigators to interview and did not provide or identify any evidence or records for the investigators to review. Am. Compl. at ¶76. However, after the initial investigation, Plaintiff's attorney obtained and

---

[1] Pursuant to Federal Rule of Civ. Proc. 12(b)(6), Plaintiff's alleged facts in the Amended Complaint are accepted as true for purposes of this Motion. However, in the event the matter proceeds, McGinn will vigorously dispute many of the facts alleged in the Amended Complaint.

submitted the police reports filed by Roe to the investigators to include in the investigative file. Am. Compl. at ¶86.

On July 25, 2023, OCRSM issued its Final Investigation Report, which detailed the statements made by Roe and each of the three witnesses interviewed, and distributed copies of that Report to Roe and Plaintiff. Am. Compl. at ¶¶50-77. OCRSM retained Dan Schorr's office to serve as the hearing officer on the Title IX complaint against Plaintiff. Am. Compl. at ¶91. After the hearing was rescheduled at the request of Plaintiff's attorney advisor, McGinn was assigned to conduct the hearing. Am. Compl. at ¶91.

On August 7, 2023, McGinn held a pre-hearing meeting via zoom videoconference with Roe, accompanied by her advisor and support person, and then, on August 18, 2023, held a similar pre-hearing meeting via zoom with Plaintiff, accompanied by his attorney advisor and support person. Am. Compl. at ¶¶92-93. At his pre-hearing meeting with McGinn, Plaintiff made a request to conduct the hearing in-person, however, the request was denied by Ms. Nastase and OCRSM. Am. Compl. at ¶¶93-94. On August 18, 2023, McGinn sent both Plaintiff and Roe a Pre-Hearing Meeting Summary detailing her meetings with both parties. Am. Compl. at ¶95.

The hearing began on August 22, 2023 and had to be continued on August 28, 2023 as the entire proceeding lasted nearly thirteen hours. Am. Compl. at ¶96. During the hearing, Roe provided extensive testimony, first in response to thorough questions from McGinn and then in response to an extensive cross-examination by Plaintiff's attorney advisor. Am. Compl. at ¶¶ 98-101. Plaintiff also testified during the hearing, although the Amended Complaint provides only a brief, six-sentence summary of Plaintiff's testimony. Am. Compl. at ¶97. The other three witnesses interviewed during the investigation and an investigator also testified at the hearing, where they were questioned by McGinn, before the advisor for each party, including Plaintiff's

3

attorney, was given an opportunity to conduct a cross-examination. Am. Compl. at ¶¶87-90 and 101(c).

Following the thirteen hours of hearing, Plaintiff and Roe each submitted Impact Statements to McGinn on August 31, 2023. Am. Compl. at ¶105. On September 11, 2023, McGinn filed her Written Notice of Determination, concluding Plaintiff was responsible for violating UMCP's policy and recommending that UMCP expel Plaintiff. Am. Compl. at ¶107. McGinn's Written Determination contained a detailed summary of the parties' respective testimony, her assessment of the witnesses and evidence and a thorough explanation of the reasoning behind her conclusion. Am. Compl. at ¶¶108(a)-(k).

On September 25, 2023, Plaintiff filed an appeal of McGinn's Written Determination, raising issues with procedural irregularities in the conduct of the investigation and hearing. Am. Compl. at ¶109. After Roe filed a response to the appeal, it was assigned to a panel of Appellate Hearing Officers comprised of three members of UMCP's faculty. Am. Compl. at ¶¶110-111. On December 21, 2023, the Appellate Panel affirmed McGinn's conclusion that Plaintiff was responsible for a violation of UMCP's policy, but reduced his discipline to a one-year suspension, barring him from UMCP premises and activities for that period. Am. Compl. at ¶¶113-114.

## APPLICABLE STANDARD

*Rule 12*

Dismissal of a claim is appropriate under Federal Rule 12 where the plaintiff has failed to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain sufficient factual allegations that when accepted as true, "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Facial

4

plausibility exists where the plaintiff pleads factual content that allows the Court to make the reasonable inference that the defendant is liable for the misconduct alleged in the complaint. *Id.*

This standard of plausibility is not akin to a "probability requirement," but instead asks for more than a sheer possibility that the defendant has acted unlawfully. *Id.* However, a plaintiff is required to "articulate facts . . . that show that the plaintiff has stated a claim entitling him to relief." *Iqbal,* 556 U.S. at 677-678 (quoting *Twombly,* 550 U.S. at 557). Thus, the plausibility requirement is only met "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (emphasis added). "Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief." *Id*. at 677-678 (internal quotations and brackets omitted).

With respect to any surviving well-pleaded factual allegations, "a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679. In this regard, "[e]ven though the requirements for pleading a proper complaint are substantially aimed at assuring that the defendant be given adequate notice of the nature of a claim being made against him, they also provide criteria for defining issues for trial and for early disposition of inappropriate complaints." *Francis v. Giacomelli*, 588 F.3d 186, 192 (4th Cir. 2009).

## ARGUMENT

### I. Count II of Plaintiff's Amended Complaint is Barred by Sovereign Immunity

McGinn adopts and incorporates, pursuant to Federal Rule of Civil Procedure 10(c), the argument that Plaintiff's claim for violation of due process is barred by the doctrine of sovereign immunity from Defendant Angela Nastase's Memorandum in Support of her Partial Motion to Dismiss. **ECF No. 40-1** at pp.4-7. As set forth therein, Plaintiff is seeking monetary damages

from McGinn as relief for the alleged violation of the Fourteenth Amendment. Am. Compl. at ¶172. Accordingly, his suit against her for conduct he alleges was in an "official capacity," under color of state law, is barred by the doctrine of sovereign immunity and, therefore, Count II of his Amended Complaint must be dismissed.

**II.     Plaintiff's Amended Complaint Fails to State a Claim for Deprivation of Life, Liberty or Property without Due Process**

Plaintiff cannot establish that McGinn deprived him of a liberty or property interest without due process. To plead a viable claim for violation of due process rights under the Fourteenth Amendment, Plaintiff must show: 1) "that he had a constitutionally cognizable life, liberty or property interest;" 2) "that deprivation of that interest was caused by 'some form of state action;'" and 3) "that the procedures employed were constitutionally inadequate." *Sansotta v. Town of Nags Head,* 724 F.3d 533, 540 (4th Cir. 2013). Plaintiff's Amended Complaint clearly demonstrates that, even if all of his factual allegations are accepted as true, he cannot establish he was deprived of a constitutionally cognizable interest and he cannot establish that the procedures employed were constitutionally inadequate.

   a. **Plaintiff Did Not Have a Constitutionally Cognizable Liberty or Property Interest**

First, Plaintiff alleges the liberty and property interests of which he was deprived were his good name and reputation, pursuing his education (including future opportunities) and in continuing and completing his education at UMCP. Am. Compl. at ¶160. There is no legal basis for asserting that those interests constitute liberty or property interests that are entitled to due process protection.

The Fourth Circuit Court of Appeals held, a constitutionally protected property interest in receipt of a benefit requires that "a person must have more than a mere 'unilateral expectation of

6

it' or 'abstract need or desire for it.'" *Equity In Athletics, Inc. v. Dep't of Educ.,* 639 F.3d 91, 109 (4th Cir. 2011)(*quoting Roth*, 408 U.S. at 577). The Supreme Court has held that property interests protected by the Fourteenth Amendment are created and defined by sources independent of the constitution "such as state statutes or rules entitling the citizen to certain benefits." *Goss v. Lopez*, 419 U.S. 565, 572-573 (1975)(*citing Board of Regents v. Roth*, 408 US 564, 577 (1972)). There are no Maryland statutes or rules under which a citizen is entitled to the benefit of continued educational pursuit at a college or university.

The Supreme Court has recognized a property interest entitled to due process protection for public education provided for and proscribed by the state. *Goss v. Lopez,* 417 U.S. 565, 573-574. However, the recognition of such interest as constitutionally cognizable was based upon state laws requiring local authorities to provide that education, which the Court found legitimized a student's claim of entitlement to a public education. *Id.* at 573-574. While there is provision for and entitlement to a public, state-provided education, based upon state laws, there is no legal or factual basis for expanding that property interest in state-mandated public education to include an interest in completely voluntary and for-cost university education which the State is under no obligation to provide. Plaintiff has not identified any state statute providing for his entitlement to continued enrollment in a State-run university that is analogous to the statute relied upon by the Supreme Court in finding a protected property interest in *Goss*. Accordingly, Plaintiff cannot establish that he was denied a constitutionally protected property interest for which he was entitled to due process.

Plaintiff further contends that he has a protected liberty interest in his continued pursuit of his education and in his good name and reputation. There is no legal basis for Plaintiff's claim that his interest in his good name and reputation is entitled to due process protection. The Supreme

Court has consistently held that "injury to reputation, standing alone, is not enough to demonstrate deprivation of a liberty interest." *Siegert v. Gilley*, 500 U.S. 226, 239 (1991)(*citing Paul v. Davis*, 424 U.S. 693 (1976)). In order to establish entitlement to constitutional due process, a plaintiff must demonstrate an interest initially recognized and protected by State law, the protection for which the State action at issue is seeking to remove or significantly alter *See Paul,* 424 US at 711. There is no interest in continued pursuit of education or reputation that is recognized or protected by Maryland Law. Plaintiff has not pled any action by any of the Defendants that distinctly altered or extinguished a right or status that was previously recognized or protected by state law, and therefore, cannot establish a qualifying liberty interest. *Id*.

Based on the allegations in his Amended Complaint, Plaintiff cannot establish that he had a constitutionally protected life, liberty or property interest that he was deprived of by state action. Therefore, Count II of Plaintiff's Amended Complaint must be dismissed.

    b. **Plaintiff Was Provided Constitutionally Sufficient Process**

Even if this Court assumes, as other Courts have, that Plaintiff can establish a basis for recognizing a constitutionally protected property or liberty interest, the allegations in his Amended Complaint clearly demonstrate that the procedural process afforded by UMCP, Nastase and McGinn was more than constitutionally sufficient. The Amended Complaint provides in precise detail the preliminary investigation conducted, including statements and evidence collected from Roe and witnesses, in which Plaintiff declined to participate, and the extensive hearing at which Plaintiff was afforded a full opportunity to be heard and dispute the charges against him. Even if all of Plaintiff's factual allegations are true, there is no legal authority to support a finding that the procedures used in his disciplinary proceedings were constitutionally inadequate.

        i. **Plaintiff's interest in his continued enrollment at UMCP and in his reputation did not warrant the most severe procedural safeguards**

The Supreme Court has held that the "fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." *Matthews v. Eldridge,* 424 U.S. 319, 333 (1976).  Courts have held that due process is not a fixed, technical concept, it "is flexible and calls for such particular protections as the particular situation demands." *Id*. at 334(*quoting Morrissey v. Brewer*, 408 U.S. 471, 481(1972)). The sufficiency of the process provided in a given situation requires consideration of the following factors:

> "[f]irst, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used and the probable value, if any of additional or substitute procedural safeguards; and finally, the Government's interest, including the...fiscal and administrative burdens that the additional or substitute procedural requirement would entail."

*Id.* at 335.

The private interests effected are Plaintiff's alleged entitlement to continuing his education at his university and his interest in his good name and reputation.  Am. Compl. at ¶160.  As set forth above, neither of those interests have been formally recognized as a constitutionally protected liberty or property interest, standing on their own.  Notwithstanding the lack of constitutional protection for the private interests at issue, they do not rise to the level of utmost seriousness and quasi-criminal nature as Plaintiff contends. Am. Compl. at ¶161.

Again, accepting the facts as alleged in his Amended Complaint as true solely for the purposes of this motion, Plaintiff's Amended Complaint contends that he faced expulsion from UMCP, which was later reduced to a suspension, thus being deprived of his alleged right to continue his education at his current university without interruption.  There is no legal or factual basis for claiming that deprivation rises to a level of utmost seriousness or a quasi-criminal nature equivalent to the deprivation of welfare benefits or criminal incarceration that Courts have

9

previously recognized as deprivations of the most serious nature, for which due process requires quasi-judicial procedures. *See*, *Matthews*, 424 U.S. at 333-334; *Goss v. Lopez*, 419 U.S. at 573.

The issue then becomes balancing those alleged property and liberty interests and the risk of erroneous deprivation thereof under the procedures used against the burden imposed by any additional procedural safeguards. The procedures used in Plaintiff's disciplinary action were extensive and thorough, even by Plaintiff's own account. Initially, Plaintiff was given detailed notice of the charge against him. Am. Compl. at ¶48. Then, Plaintiff was afforded an opportunity to participate in the investigation process, including to provide any evidence or information to guide the investigation and dispute the charges against him. Am. Compl. at ¶¶76 and 86. Additionally, Plaintiff received a Report detailing the evidence collected during that investigation, in which he had declined to participate. Am. Compl. at ¶77.

After the investigation was concluded and before any disciplinary action was taken, Plaintiff was afforded an opportunity to be heard at a hearing where he was entitled to and, in fact, did present testimony and examine and challenge the evidence against him. Am. Compl. at ¶¶96-101 Throughout the entire process, Plaintiff was represented by an attorney who participated in the hearing, including cross-examining and challenging the credibility of the student who made the charge against him and all witnesses offered in support of that charge. Am. Compl. at ¶¶49, 76, 86, 93, 98, 101 and 104.

To the extent Plaintiff is seeking to require UMCP to conduct full criminal trial with all attendant procedures, there is simply no indication that such additional procedural safeguards are warranted or even of probable value. The Supreme Court has held that the "essence of due process is the requirement that 'a person in jeopardy of serious loss [be given] notice of the case against him and an opportunity to meet it.'" *Matthews*, 424 U.S. at 348. In the context of school discipline,

10

the Supreme Court has held that due process requires "that the student be given oral or written notice of the charges against him and, if he denies them, an explanation of the evidence the authorities have and an opportunity to present his side of the story." *Goss*, 419 U.S. at 581 (1975). It concluded that "requiring effective notice and informal hearing permitting the student to give his version of the events will provide a meaningful hedge against erroneous action." *Id.* at 583-584. The notice and hearing provided to Plaintiff were in accordance with the federal regulations applicable to Title IX investigations.

Even in the context of constitutionally protected property interest in state-provided public education, "the Court stopped short of requiring a *formal* hearing." *Board of Curators of University of Missouri v. Horowitz*, 435 U.S. 78, 89 (1978)(*citing Goss*, 419 U.S. at 583). The Fourth Circuit Court of Appeals has acknowledged that "[i]n the academic setting particularly, the Supreme Court has recognized that the requirements of due process may be satisfied by something less than a trial-like proceeding." *Henson v. Honor Comm. Of U. Va.,* 719 F.2d 69, 74 (4th Cir. 1983) *citing Goss*, 419 U.S. 565). Therefore, Plaintiff's property and liberty interests in his continued education and reputation, to the extent they are constitutionally cognizable, do not warrant full proceedings equivalent to a criminal trial.

> ii. **The procedures set forth in Plaintiff's Amended Complaint provided adequate safeguards against erroneous deprivation of Plaintiff's interest**

In the context of university disciplinary action, the Fourth Circuit has held that due process requires that the student "receive notice 'contain[ing] a statement of the specific charges and grounds, which, if proven, would justify [disciplinary action]." *Doe v. Va. Polytechnic Inst. & State Univ.*, 77 F.4th 231, 237(*quoting Dixon*, 294 F. 2d at 158). Thereafter, the Fourth Circuit has held that due process requires universities to "hold 'a hearing which gives [university officials] an opportunity to hear both sides in considerable detail." *Doe v. Va. Polytechnic,* 77 F.4th at

11

237(*quoting Dixon*, 294 F. 2d at 158-159).  According to the Court, to provide due process in the event that student declines to attend the hearing, the university should provide a student, "the names of the witnesses against him and an oral or written report on the facts to which each witness testifies." *Id*. at 237(*quoting Dixon*, 294 F. 2d at 159).  Finally, the Court held that a student subject to discipline "should 'be given the opportunity to present…his own defense against the charges and to produce either oral testimony or written affidavits or witnesses on his behalf.'"  *Id*. at 237(*quoting Dixon*, 294 F. 2d at 159).

  Plaintiff's allegations in his Amended Complaint do not evidence him being deprived of his right to be heard and, in fact, actually demonstrate the substantial breadth of process with which he was afforded.  Plaintiff acknowledges that he was given formal, written notice of the charge against him when OCRSM initiated its investigation.  Am. Compl. at ¶¶48.  Plaintiff's Amended Complaint does not offer any details regarding the contents of that formal notice, however, he makes no allegations that the notice provided was insufficient or defective in any manner.  Thus, the procedures employed satisfied the first requirement for due process of providing Plaintiff with effective notice of the case against him.  *See, Matthews*, 424 U.S. at 348; *Goss*, 419 U.S. at 581.  Plaintiff focuses on particular details for which he was not given the opportunity to conduct essentially pre-trial, litigation discovery and his allegation that McGinn was not an unbiased decision-maker based upon her consideration of the evidence and credibility assessments.  Those complaints do not, even if true, demonstrate that the process provided was constitutionally insufficient.

  While Plaintiff claims there were deficiencies in the investigation, particularly in the alleged failure by the investigators to conduct an exhaustive search for evidence or challenge evidence presented, he concedes that he voluntarily elected not to contribute to that investigation.

Am. Compl. at ¶76. Furthermore, the Fourth Circuit has "never held that a university has an obligation to present exculpatory evidence on behalf of an accused student." *Doe v. Va. Polytechnic,* 77 F.4th at 238. Plaintiff elected not to participate in and contribute to the investigation and, therefore, did not provide the investigators with any information on potential evidence, witnesses or facts that could support his rebuttal of the charge. Finally, the investigators were not the decision-makers with regard to the disciplinary action to be taken against Plaintiff and, thus, the investigation itself, which alone did not impose discipline, could not deprive Plaintiff of any liberty or property interest sufficient to support a claim for violation of due process. *See, Tigrett v. Rector & Visitors of the Univ. of Va.*, 290 F.3d 620, 627-628 (4th Cir. 2002).

As set forth in his Amended Complaint, Plaintiff was given a hearing where both sides were given an opportunity to be heard in considerable detail. Prior to that hearing, Plaintiff received the Final Investigation Report, which provided a summary of the witnesses to be presented and the information obtained from each during the investigation, which Plaintiff declined to participate in. Am. Compl. at ¶¶50-77. Furthermore, Plaintiff states he attended the hearing, with his personal attorney, where he was afforded an opportunity to present his own defense to the charge, including his own testimony and evidence, and permitted to question the witnesses against him. Am. Compl. ¶¶87-90, 97-101. By Plaintiff's own account, the disciplinary proceedings against him more than satisfied the due process requirements set forth by the Fourth Circuit Court of Appeals. *Doe v. Va. Polytechnic*, 77 4th at 237.

Plaintiff contends that he was not afforded due process based upon the denial of access to and ability to question Roe on her mental health. Am. Compl. ¶163. There is no legal authority to support that the limitation of access to mental health records of an accuser constitute a violation of due process. Preliminarily, the ability to *obtain* evidence and impeach or cross-examine an accuser

13

are the types of judicial litigation procedures that Courts have found are not necessarily required by due process outside of the criminal context. *Henson,* 719 F.2d at 74. The critical issue is whether or not Plaintiff was presented with a meaningful opportunity to be heard. The allegations in his Amended Complaint demonstrate Plaintiff was given sufficient notice of the charges against him and more than ample opportunity to meet those charges and present his own side of the story. *Goss*, 419 U.S. at 581; *Doe v. Va. Polytechnic,* 77 F.4th at 237.

Although courts are divided on whether due process even requires that a student subject to discipline have an opportunity to cross-examine accusers and/or witnesses, the Fourth Circuit has "never held that cross-examination is required." *Doe v. Va. Polytechnic,* 77 F.4th at 239(*citing Doe v. The Citadel*, No. 22-1843, 2023 U.S. App. LEXIS 14579, 20123 WL 3944370 at *2 (4th Cir. June 12, 2023)). In the instant case, based solely upon the allegations in his Amended Complaint, Plaintiff not only had the opportunity to participate in the hearing and present evidence, including testimony on his own behalf, he also had the opportunity to have his counsel extensively cross-examine his accuser Roe and the witnesses. Am. Compl. at ¶¶ ¶¶87-90, 97-101. Plaintiff complains regarding particular areas on which he was unable to solicit evidence from his accuser, particularly her mental health history. However, university policy and federal regulations clearly prohibited the compelling of such information without consent. Furthermore, the mere fact that he had the opportunity to cross-examine her at all is more process than required by the Fourth Circuit. *Doe v. Va. Polytechnic,* 77 F.4th at 239.

Plaintiff's allegations regarding McGinn's alleged impartiality are similarly insufficient to establish a violation of due process. Rather than attacking the sufficiency of the process provided, Plaintiff is essentially alleging that he disagrees with the conclusions, including credibility assessments, made by the decision-maker. The facts set forth in the Amended Complaint do not

evidence that he was not afforded sufficient notice of charges and an opportunity to be heard, merely that he believes the decision of McGinn and subsequent affirmation by the Appellate Panel were incorrect. Essentially, Plaintiff is seeking to have this Court conduct a de novo review of the disciplinary proceedings to reevaluate the evidence and witnesses presented and substitute this Court's judgment for that of the decision-makers in the disciplinary proceeding. There is no legal basis for such intervention nor any basis to accept allegations of bias and improper credibility determinations to constitute a violation of due process in the context of university discipline.

Thereafter, Plaintiff offers the conclusory assertion that he was "denied a meaningful opportunity to clear his name." Am. Compl. ¶163(e). However, his own allegations detailing the breadth of the investigation, in which he voluntarily and intentionally declined to participate, the length and detail of testimony solicited from Roe and the supporting witnesses, all of whom his attorney had an opportunity to cross-examine, and the testimony and evidence he was able to submit clearly demonstrate the fallacy of that assertion. The Fourth Circuit Court of Appeals has held that a thirteen-hour trial with an examination of witnesses and thorough presentation of evidence at which students were present and afforded a full opportunity to participate and testify was sufficient due process. *Tigrett*, 290 F.3d at 630. Even assuming those students had a protected liberty interest in continued attendance at the university, the opportunity to attend and participate in a proceeding at which witnesses and evidence were presented constituted sufficient process to defeat the claim for violation of due process as a matter of law. *Tigrett* at 627-630.

Notably, the Supreme Court in *Goss* held that it stopped short of requiring that hearings in connection with public school suspensions "afford the student the opportunity to secure counsel, to confront and cross-examine witnesses supporting the charge, or to call his own witnesses to verify his version of the incident." *Goss*, 419 U.S. at 583. Even accepting the truth of all of the

15

factual allegations in Plaintiff's Amended Complaint, he was provided with this exact level of process that the Supreme Court deemed beyond what was constitutionally required when facing deprivation of a clearly established, protected property interest in a state-provided public education.

Plaintiff was presented with clear, detailed notice of the charge against him and evidence in support thereof, given an opportunity, which he declined, to participate and contribute to an investigation to obtain evidence to rebut that charge and given a full evidentiary hearing at which he was permitted to present testimony and have his attorney cross-examine witnesses. Those procedural safeguards were more than sufficient to guard against an erroneous deprivation of his right to continue his enrollment in UMCP. Furthermore, following the hearing, McGinn provided a thorough Written Determination, detailing her findings and the reasonings for her conclusion. Am. Compl. at ¶108. If the process provided to that point was not sufficient, Plaintiff was presented with yet another opportunity to meet and be heard on the charges against him by appealing the Determination to UMCP's Appellate Panel. Am. Compl. ¶¶109-111.

The exhaustively detailed investigation and hearing and subsequent appeal detailed so thoroughly in Plaintiff's Amended Complaint evidence that Plaintiff was provided with constitutionally sufficient procedures in the deprivation of his interest in his continued enrollment at UMCP, regardless of whether that interest is entitled to constitutional protection. Therefore, Count II of Plaintiff's Amended Complaint must be dismissed.

## CONCLUSION

The factual allegations in Plaintiff's Amended Complaint are insufficient to state a claim for violation of due process in the disciplinary proceedings against Plaintiff. Plaintiff's factual account demonstrates that Plaintiff was provided with sufficient notice of the charge against him

and more than ample opportunity to be fully heard in his rebuttal of that charge. The investigative and hearing procedures provided more than constitutionally sufficient safeguards against an erroneous deprivation of his interests. Accordingly, Plaintiff cannot establish that McGinn violated his due process rights under the Fourteenth Amendment.

**WHEREFORE**, for the reasons set forth in Defendant's Motion to Dismiss and those set forth fully herein, McGinn respectfully requests that this Court dismiss Count II of the Plaintiff's Amended Complaint with prejudice

Respectfully submitted,

*/s/Megan M. Jenkins*
Megan M. Jenkins (20894)
ECCLESTON & WOLF, P.C.
Baltimore-Washington Law Center
7240 Parkway Drive, 4th Floor
Hanover, MD 21076-1378
(410) 752-7474 (phone)
(410) 752-0611 (fax)
E-mail: jenkins@ewmd.com
*Attorney for Defendant Alyssa-Rae McGinn*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on March 4th, 2024, copies the foregoing Memorandum in Support of Defendant's Motion to Dismiss were served via the Court's Electronic Case Filing System to:

> Patrick R. Seidel,
> William N. Sinclair
> Todd W. Hesel
> Andrew M. Harvey
> Silverman Thompson Slutkin & White, LLC
> 400 East Pratt Street, Suite 900
> Baltimore, MD 21202
> *Attorneys for Plaintiff*
>
> Ariel S. Lichterman
> Office of the Attorney General – State of Maryland
> Higher Education Division
> 200 Saint Paul Place
> Baltimore, MD 21202
> *Attorney for University of Maryland, College Park and Angela Nastase*

*/s/Megan M. Jenkins*
Megan M. Jenkins (20894)